(C. D. 2024)

R. W. Smith *v*. United States

United States Customs Court, Second Division

(Decided September 8, 1958)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Ford, Judge: The suit listed above challenges the action of the collector of customs in classifying certain docenettes or deviation recorders, together with parts, used to measure the angle and direction of deviation from the vertical of an oil well hole by photographic means, as surveying instruments and parts and levying duty thereon at the rate of 40 per centum ad valorem under paragraph 360 of the Tariff Act of 1930. Plaintiff claims said merchandise to be properly

dutiable at the rate of 13¾ per centum ad valorem under paragraph 372 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, as machines and parts thereof, not specially provided for, or at the rate of 13¾ per centum ad valorem under paragraph 353 of said act, as modified, *supra,* as articles having as an essential feature an electrical element or device.

The text of the competing paragraphs, so far as pertinent hereto, reads as follows:

Paragraph 360 of the Tariff Act of 1930:

Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem; * * *.

Paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739:

Articles having as an essential feature an electrical element
   or device, such as electric motors, fans, locomotives, port-
   able tools, furnaces, heaters, ovens, ranges, washing ma-
   chines, refrigerators, and signs, finished or unfinished,
   wholly or in chief value of metal, and not specially provided
   for:

    \*      \*      \*      \*      \*      \*      \*

   Other * * *_____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal,
   not specially provided for, of articles provided for in any
   item 353 of this Part * * *_____ The same rate of
                                                      duty as the ar-
                                                      ticles of which
                                                      they are parts

Paragraph 372 of said act, as modified by T. D. 52739, *supra:*

Machines, finished or unfinished, not specially provided for:

    \*      \*      \*      \*      \*      \*      \*

   Other * * *_____ 13¾% ad val.

Parts, not specially provided for, wholly or in chief value of
   metal or porcelain, of any article provided for in any item
   372 in this Part:

    \*      \*      \*      \*      \*      \*      \*

   Other_____ The rate for the
                                                      article of which
                                                      they are parts

At the trial of this case, a drawing, showing a cross-section of the internal structure of the imported merchandise, was admitted in evidence as exhibit 1; also, a sample of a piece of film, which had been used in a device like the imported merchandise, was admitted in evidence as exhibit 2 and a diagram, showing the electrical wiring of

the controls used at the head of an oil well on the surface of the earth in connection with the operation of the imported device inside the well, was admitted in evidence as exhibit 3.

Only one witness testified for the plaintiff, none for the defendant, and, when this witness was asked to describe how the subject instrument or device operates, he stated:

The equipment that we received from Germany is a tool that when suspended in an approximate vertical position and held stationary, will indicate in a photographic manner the deviation from true vertical and also the direction of this deviation. That is the sole function of the tool.

The witness was then interrogated and answered as follows:

Q. Using Exhibit 1, will you please enumerate the parts contained in this device, and tell us how each part operates?—A. On the diagram starting from the righthand side, you will see a spring, which is actually a shock absorber, which absorbs the shock that the tool is subjected to. It acts much like the shock absorber on an automobile. The tool bounces up and down on this spring when it is used in the field or oil well, where we use it. Above this shock absorber we have a compass enclosed in an oil bath, you might say, and on this compass are a series of concentric circles. This compass is mounted in this oil bath in order to dampen its movement. If it were floating in air, it would move around rapidly, and through the very minutest variation or shock, it would take a tremendous amount of time to stabilize, so having it in oil, the compass is stabilized, and we don't wait long for it to come to rest. Above this compass with these concentric circles we have a very sensitive pendulum, which hangs directly over the center of the concentric circle. This pendulum is free to swing in any direction. As a result, it always seeks a true vertical due to the law of gravity.

Above this pendulum we have a lens, and behind the lens, at the focal point, we have a piece of film, which is threaded from a supply roll to a take-up roll. The picture of the pendulum swinging above the compass with the concentric circle is focused on this film. When the tool is suspended in a vertical position, if the tool is true vertical, the pendulum will be exactly in the center of the concentric circle. The pendulum will coincide with the dot when it is truly vertical. When not vertical the pendulum will swing to one side, and each concentric circle is calibrated in degrees. If the tool is off by 2 degrees, the pendulum will line up with the first concentric circle, and if the tool is off by 4 degrees, it will line up with the second concentric circle. In operation we take a picture of the pendulum. It has two cross-hairs at the bottom. We take a picture of the pendulum as it swings over the circumference; the compass gives the direction of the deviation, and the position of the cross-hairs over the concentric circle shows us the amount of the deviation from the true vertical.

   *    *    *    *    *    *    *

Q. How frequently are these pictures taken as the instrument is put into or taken out of the well hole?—A. That depends on how accurate the operator is, and how detailed the operator wants to know the exact location of the bottom of his hole, or any point of his hole. It is customary to take a picture every 200 feet. Some will take it every 100 feet. If they want a detailed picture, they take it every 50 feet. At every 100 feet, you assume the picture you take, the hole is inclined in the same manner throughout the whole 100 foot section.

The witness also testified, in substance, that, so far as he could tell, the involved instrument would be absolutely useless in deter-

mining or delineating the form, extent, area, or position of any part of the earth's surface, either land or water, such as a tract of land, a coast, or a harbor.

On cross-examination, plaintiff's witness testified that a transit is a device that one usually sees on a sort of 3-pronged platform that a surveyor is using to look through and that the surveyor records on paper the angles with reference to a fixed location.

X Q. Doesn't your own device, instead of doing it manually, do the same thing in a vertical position in the well hole?—A. We are determining angles in a vertical position.

X Q. In the same manner except that you do it by a photograph down in the well hole, and you determine the angle by virtue of the position of the pendulum on the photograph?—A. That is right.

X Q. And you do that, the same thing is done on the horizontal system, the operator makes those recordations on your own pad of paper, so one is used for recording a plane going down in a vertical direction by the engineer, whereas the other is in the horizontal position?—A. In both cases you are determining angles.

Counsel for the respective parties have agreed as follows:

It is further stipulated and agreed that the docenette or deviation recorder and the articles imported therewith are exclusively used in applied science and are not used in pure science.

Counsel for the importer, in his brief, cites dictionary definitions of the terms "Survey" and "Surveying," as well as numerous cases holding various instruments to be surveying instruments and those held not to be surveying instruments. Counsel does not deny that there may be underground surveys for tunnels and subways and cites the case of *Howe's Cave Line & Cement Co.* v. *Howe's Cave Ass'n.* (1895), 34 N. Y. S. 848, wherein the court held that it may grant leave to survey any of the property in possession of the other party to determine whether the defendant had trespassed upon and removed valuable material from the land of the plaintiff. This permission was granted, in spite of the argument of defendant that the term "Survey," in the statute under consideration contemplated a surface survey.

In addition to the foregoing, indicative of the fact that surveying is not limited to the horizontal measurement of angles nor the relative positions of points on the earth's surface, is the following lexicographic information:

Columbia Encyclopedia—second edition—1950—page 1921:

surveying, the science of finding the relative position of points on or near the earth's surface. Boundaries, areas, elevations, construction lines, and geographical or artificial features are determined by the measurement of horizontal and vertical distances and angles and by computations based in part on the principles of geometry and trigonometry. * * * Branches of surveying are named according to the purpose of surveys, e. g., topographic surveying, used to determine

relief (see CONTOUR), route surveying, mine surveying, construction surveying, or according to the method used, e. g., transit surveying, plane-table surveying, photogrammetic surveying (securing data by photographs). Surveys based on photographs are especially useful in rugged or inaccessible country and for reconnaissance surveys for construction, mapping, or military purposes. * * *

The Encyclopedia Americana—volume 26 (1953)—page 91:

SURVEYING, the science of determining the positions of points on the earth's surface for the purpose of making therefrom a graphic representation of the area. By the term earth's surface is meant all of the earth that can be explored—the bottoms of seas and rivers, and the interior of mines, as well as the more accessible portions. It includes the measurement of distances and angles and the determination of elevations. * * *

The Encyclopedia Americana—volume 26 (1953)—page 98b:

Mine Surveying.—Mine surveys are made for the purpose of determining the relation of mine workings to the surface boundaries of the property and for obtaining data from which graphical representation of mine workings may be made. In mine surveying the methods of land surveying are used to a considerable extent but with certain modifications made necessary by special conditions encountered. * * *

The cases cited by plaintiff and distinguished or relied upon by the defendant covered numerous types of instruments. In the case of *A. Lietz & Co.* v. *United States*, 50 Treas. Dec. 510, T. D. 41893, the court had under consideration certain spirit levels, composed chiefly of blown glass, without metal, which were used with a transit to secure a level or perfectly horizontal position. The classification was under paragraph 218 of the Tariff Act of 1922, which provided for "* * * all articles of every description not specially provided for, composed wholly or in chief value of glass * * * blown * * * ." The levels were claimed to be properly dutiable as follows:

Spirit levels are dutiable at 45 per cent under paragraph 228 (mountings for optical instruments, etc.), or at 50 per cent under paragraph 230 (mfs. of glass), or at 40 per cent under paragraph 360 (parts of surveying instruments).

The court, in that case, held the spirit levels involved therein to be properly dutiable as classified and reasoned that, even though surveying instruments may be optical instruments, the levels could not be covered by said provision, since surveying instruments were taken out of paragraph 228 of the Tariff Act of 1922. The claim under paragraph 360 of the Tariff Act of 1922 likewise failed, since the provision for parts required them to be wholly or in chief value of metal. Paragraph 230 of the Tariff Act of 1922, *supra*, was held inapplicable, since paragraph 218, *supra*, more aptly described the merchandise.

From the foregoing, it is evident that the *Lietz* case, *supra*, does not support plaintiff's position, nor does plaintiff's analogy of the spirit level to the carpenter level assist the plaintiff in this matter.

*Davies, Turner & Co. et al.* v. *United States*, 40 Treas. Dec. 177, T. D. 38877, involved the proper classification of mariners' sextants,

which were classified as surveying instruments under paragraph 94 of the Tariff Act of 1913 and claimed to be articles or wares, not specially provided for, in chief value of base metal, not plated with gold or silver, under paragraph 167 of said act.

The Board of General Appraisers (now the United States Customs Court), at page 178 and 179 of the *Davies, Turner* case, *supra*, cited from the New International Encyclopedia the following relative to surveying instruments:

*Surveying instruments:* The various instruments used by the engineer and surveyor in determining elevations, directions, and distances in their work of mapping land and locating and laying out engineering works. They may be broadly divided into instruments for (1) measuring distances, (2) determining directions, (3) determining horizontal lines, (4) *measuring angles,* and (5) miscellaneous work. * * *

For measuring angles the instruments [*sic*] most commonly used by engineers is the transit. This is the most useful and universal of surveying instruments. * * *

An instrument of the same construction, but the telescope of which can not make a complete revolution on the horizontal axis, and thus does not transit, is usually called a theodolite. * * * *The sextant is a convenient hand instrument for measuring angles universally* and for making observations on shipboard, *and also frequently used by engineers in surveying* when angles have to be measured from a boat, as in locating soundings, buoys, etc. * * * [Italics quoted.]

The Board of General Appraisers (now the United States Customs Court) held that said merchandise was used almost exclusively for navigational purposes for the measurement of angles to determine the latitude or longitude of a vessel at sea and frequently used by engineers in surveying, and was properly dutiable as a surveying instrument.

Plaintiff, in the instant case, contends there is no comparison between the use of a sextant and the instrument at bar. Defendant, on the other hand, contends the definitions cited and the language used in the decision are pertinent to the issues involved herein.

We are in accord with the position taken by defendant. It is clear that the instrument involved in the instant case measures angles and determines direction by means of photography, which method is a recognized manner of surveying known as photogrammetic surveying.

In the case of *Wagner-Watrous, Inc.* v. *United States,* 6 Cust. Ct. 39, C. D. 419, the court held certain barometer movements with altimeter dials to be dutiable under paragraph 372 of the Tariff Act of 1930, as claimed. This holding was due to the inaccuracy of the instrument which was, therefore, not susceptible for use as a surveying instrument.

In *Gerhard & Hey Co., Inc.* v. *United States,* 3 Cust. Ct. 217, C. D. 237, the court considered an echo-sounding instrument, which was classified under paragraph 368 of the Tariff Act of 1930 and claimed to be a machine under paragraph 372 of the Tariff Act of 1930, or a surveying instrument under paragraph 360 of the Tariff Act of 1930.

The court overruled the protest and held the merchandise was not properly dutiable under paragraph 360, *supra*, as a surveying instrument, because of the failure of proof to establish that the chief use of the instrument is for surveying.

Certain types of instruments were involved in the case of *American Paulin System, Inc.* v. *United States*, 72 Treas. Dec. 475, T. D. 49221, namely, altimeters, aneroids, barographs, and barometers. The court held that the altimeters are chiefly used by surveyors in making preliminary surveys in oil fields and, hence, are surveying instruments within the provisions of paragraph 360 of the Tariff Act of 1930 and overruled the protest as to the altimeters and barometers. Because of failure of proof as to the chief use of the aneroids and barographs by surveyors, the court held said merchandise to be properly dutiable under paragraph 372 of the Tariff Act of 1930.

The decisions in the *Wagner* case, the *Gerhard* case, and the *American Paulin* case, *supra*, do not stand for the proposition that instruments used to measure height or depth of a single geographical point are not surveying instruments, as claimed by plaintiff herein. The decisions in the *Gerhard* case and the *American Paulin* case held the instruments not to be surveying instruments, because of the failure of proof to establish chief use. The *Wagner* case, *supra*, held the merchandise to be dutiable as machines, solely due to the inaccuracy of the instruments.

Upon the record herein, the cases cited, and definitions from the various lexicographers, we find that the docenette or deviation recorder, together with other parts involved herein, is an instrument used to measure the angle and direction of deviation from the vertical and, as such, is a surveying instrument within the purview of paragraph 360 of the Tariff Act of 1930, as classified by the collector of customs. Being a designation by use, the provision for surveying instruments takes precedence over the *eo nomine* classifications and over the descriptive provisions in paragraphs 353 and 372 of said act, as modified, *supra*, invoked by plaintiff. All claims of the plaintiff are, therefore, overruled, and the decision of the collector of customs is affirmed. Judgment will be rendered accordingly.