**Slip Op. 02-28**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
HELI-SUPPORT, INC. AND                  :
    AEROTEC, INC.,               :
                                        :
             Plaintiff,   :
                                        :
             v.           :    Court No. 99-10-00636
                                        :
UNITED STATES,                          :
                                        :
             Defendant.   :
_____:

[Motion for summary judgment upholding Customs' tariff classification granted.]

Dated: March 13th, 2002

Peter Herrick, Esq. for plaintiffs Heli-Support, Inc. and Aerotec, Inc.

Robert D. McCallum, Jr., Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Barbara M. Epstein, Civil Division, United States Department of Justice, Commercial Litigation Branch, Chi Choy, Esq., Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for defendant.

# <u>OPINION</u>

**RESTANI, Judge:** This customs classification action is before the court on Defendant's motion for summary judgment. USCIT Rule 56. Defendant, the United States, moves for summary judgment against plaintiffs, Heli-Support, Inc. and Aerotec, Inc. (collectively "Heli-Support"), on the grounds that the United States Customs Service ("Customs") properly classified Heli-Support's merchandise upon entry from Sweden in 1997.

**Jurisdiction**

This court has jurisdiction pursuant to 28 U.S.C. § 1581(a) to hear appeals from denials

of classification protests.  Werner & Pfleiderer Corp. v. United States, 17 CIT 916, 917 (1993).

**Background**

Heli-Support imported the product in question, the Saab TopEye AE and Ground

Reference System ("TopEye"), into the United States from Sweden in 1997.[1]  The TopEye is a

high precision system used for measuring topography.  See Technical Description, Saab TopEye,

available at http://www.combitech.se/survey/topeye/index.html (last visited March 13, 2002)

(hereinafter "Technical Description").  The TopEye uses a specialized laser camera that is

mounted to the undercarriage of any standard helicopter or fixed wing aircraft to generate

topographical images.  See id. at 1.  The TopEye is attached to a helicopter or aircraft so that it

may photograph various landscapes from above and, from those pictures, produce maps.  Id. at 4.

The images are produced by emitting a laser pulse, which is then directed by a set of

mirrors to reflect off of a given object.  Id. at 5.  That reflection, in turn, is captured by a light

collector; the time required for the light to travel from the laser, to the object, and back to the

collector is measured and divided by the speed of light to calculate distances.  See Defendant's

Statement of Material Facts Not in Issue, No. 11.  Simultaneously, the TopEye uses two video

cameras to record overhead images, as well as images contained in a field of view larger than the

laser scanning width.  Technical Description at 4.  These cameras are aligned with the laser

scanner to allow synchronization with the captured terrain data.  Id.  The combination of the

---

[1]  Heli-Support is the importer of record in this case, while Aerotec is the ultimate consignee of the product in question.  Both plaintiffs will be referred to collectively as "Heli-Support" in this opinion.

laser-generated and video images can be used to create highly detailed, large-scale maps in near real time. See id. The parties do not dispute the essential components and functions of the TopEye.[2]

Upon import, Customs classified the TopEye as a "surveying instrument" under subheading 9015.80.20 of the Harmonized Tariff Schedule of the United States (1997) ("HTSUS") and, accordingly, imposed a 3.9% ad valorem duty. Heli-Support claims that the TopEye should have been classified as a "measuring or checking instrument" under HTSUS 9031.80.00, and as such, should have entered the United States duty-free.

## Standard of Review

The court shall grant Defendant's motion for summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See USCIT Rule 56(d). The relevant facts are not in dispute. The only issue is the scope of the HTSUS provisions with respect to this product, which may be determined as a matter of law. See E.M. Chem. v. United States, 920 F.2d 910, 912 (Fed. Cir. 1990).

## Discussion

Under Rule 1 of the General Rules of the Interpretation ("GRI") of the Harmonized Tariff Schedule, "a court first construes the language of the heading, and any section or chapter notes in

---

[2] Plaintiff agrees that the TopEye is composed of optical elements used to create topographical images. See Pl.'s Statement of Material Facts, at 1-2. Plaintiff, therefore, does not dispute the basic functions or components of the TopEye itself. Instead, Plaintiff disputes the scope of "surveying devices" under the HTSUS. Plaintiff argues that, even though the TopEye uses cameras, mirrors, and lasers to create digital images, the TopEye is "not a survey instrument to be used in the practice of the science of surveying" by "surveyors." See id. at ¶¶ 18, 20. Plaintiff's argument is, therefore, a legal one and properly decided on summary judgment.

question, to determine whether the product at issue is classifiable under the heading. Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise." Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998). In reviewing Customs' classification here, the court must first determine whether the TopEye can generally be classified as a "surveying device" under heading 9015. In doing so, the court looks to whether the TopEye is, as Plaintiff suggests, more appropriately classified under heading 9031 as a "measuring or checking instrument."[3]

Heading 9031 states that it may be invoked only when the item in question is not specified elsewhere in chapter 90.[4] Therefore, if the court determines that the TopEye is properly classified under heading 9015 as a surveying device, the TopEye cannot be classified under heading 9031 as a checking instrument. If the court finds that the TopEye is classifiable as a surveying device, the court must then determine whether it should be classified under the "optical instrument" subheading. See HTSUS 9015.80.20.[5] The primary inquiry, therefore, is whether

---

[3] Heli-Support withdrew its initial argument that the TopEye should have been classified under HTSUS 8803.30.00 as a "helicopter part." See Plaintiff's Response Brief at 2. The court notes that this claim would have failed pursuant to note 2(g) of HTSUS § XVII, because that note excludes "parts and accessories" of Chapter 90 from classification under § XVII and, therefore, under Chapter 88 by incorporation.

[4] HTSUS 9031.80.00 reads as follows:
9031    Measuring or checking instruments, appliances and machines, not specified or
           included elsewhere in this chapter...
Id. (emphasis added)

[5] HTSUS 9015.80.20 provides:
9015    Surveying (including photogrammetrical surveying), hydrographic,
           oceanographic, hydrological, meteorological or geophysical instruments and
           appliances, excluding compasses; rangefinders, parts and accessories thereof:
9015.80          Other instruments and appliances:

Customs properly classified the TopEye as a surveying device.

### A. Surveying Device

Surveying devices are broadly defined to include instruments of modern technology that carry out special types of surveying, beyond mere surface examinations. See Gehrig, Hoban & Co., Inc., v. United States, 293 F. Supp. 433, 439 (Cust. Ct. 1968); see also Schlumberger Well Surveying Corp. v. United States, 54 CCPA 37, 41 (1967) (holding that cartridges designed to determine the dip of subsurface formations for oil exploration are surveying devices); R.W. Smith v. United States, 41 Cust. Ct. 78, 81-82 (1958) (holding that deviation recorders and parts used to measure the angle and the direction from the vertical of an oil well hole are surveying devices).

These cases have adopted broad lexicographic definitions of the word "survey" and "surveying instrument." For example, the court in R.W. Smith referred to the definition of "surveying" in Columbia Encyclopedia (2d ed. 1950), stating:

> surveying, the science of finding the relative position on or near the earth's surface. Boundaries, areas, elevations, construction lines, and geographical or artificial features are determined by the measurement of horizontal and vertical distances and angles and by computations based in part on the principles of geometry and trigonometry. *** Branches of surveying are named according to the purpose of surveys, e.g., topographic surveying, used to determine relief (see CONTOUR), route surveying, mine surveying, construction surveying, or according to the method used, e.g. transit surveying, plane-table surveying, photogrammetic surveying (securing data by photographs). Surveys based on photographs are especially useful in rugged or inaccessible country and for reconnaissance surveys for construction, mapping, or military purposes.

---

9015.80.20          Optical instruments and appliances...

R.W. Smith at 1921.

R.W. Smith also referred to the definition of "surveying" in the Encyclopedia Americana,

Volume 26 (1953):

> SURVEYING, the science of determining the positions of points
> on the earth's surface for the purpose of making therefrom a
> graphic representation of the area. By the term earth's surface is
> meant all of the earth that can be explored–the bottoms of seas and
> rivers, and the interior of mines, as well as the more accessible
> portions.  It includes the measurement of distances and angles
> and the determination of elevations.

R.W. Smith at 91.

In addition, Webster's Third New International Dictionary of the English Language

(1981) defines "survey" as follows:

> 1- Survey:  1a: to look over or examine with reference to condition,
> situation, or value: examine and ascertain the state of: Appraise, Estimate,
> Evaluate...2: to determine and delineate the form, extent, and
> position of (as a tract of land, a coast, or a harbor) by taking linear
> and angular measurements and by applying the principles of
> geometry and trigonometry 3a: to view from or as if from a high
> place or a commanding position: take an inclusive or overall view
> of; consider or study comprehensively: examine the whole extent
>
> 2- Survey: ...3a: the process of surveying an area of land or water:
> the operation of finding and delineating the contour, dimensions,
> and position of any part of the earth's surface whether land or
> water (a topographic and hydrographic, of a locality) b: a measured
> plan, a description of a portion of an area or of a road or line through
> an area obtained by surveying...

Heli-Support ignores these definitions and argues that the TopEye is not a surveying instrument

because it is not an instrument used in the practice and science of surveying by a surveyor.   The

court notes, however, that TopEye's own marketing literature describes it as a surveying device,

as does the technical description of the product on the SAAB website.

There is no question that the primary function of the TopEye is to record topographical images. The TopEye would, under any of the above definitions, be considered a surveying device. "[A]bsent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999). Upon review of the its components and functions, the court finds that the TopEye is properly classified as a surveying device.

Plaintiff argues that the TopEye is more appropriately classified as a checking or measuring instrument under heading 9031. GRI Rule 3(a) states that if goods are classifiable under two or more headings, classification must be effected under the provision with the most specific description.[6] The court has already determined that the TopEye is classifiable as a surveying device. See discussion supra. Because heading 9031, by its own prohibition, cannot apply to items otherwise classified under the same chapter, the court need not determine which heading is more specific.

The court notes, however, that heading 9015, which reads "surveying (including photogrammetrical surveying), hydrographic, oceanographic, hydrological, meteorological or geophysical instruments and appliances, excluding compasses; rangefinders; parts and accessories thereof" is, on its face, more specific than heading 9031, which reads: "measuring or checking instruments, appliances and machines, not specified or included elsewhere in this

---

[6] Harmonized Tariff Schedule General Rules of Interpretation:
Classification of goods in the schedule shall be governed by the following principles:

    3.    When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:
        (a)    The heading which provides the most specific description shall be preferred to heading providing a more general description....

chapter; profile projectors; parts and accessories thereof." In analyzing specificity, the court may only compare "the language of the headings and not the language of the subheadings." Orlando Food Corp., at 1440. Under the "rule of relative specificity," the court would look "to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." Orlando Food Corp., at 1441. To the extent necessary, the court finds that the description and requirements of heading 9015 are more specific than those of heading 9031. Finding that the TopEye is classifiable as a surveying device, the court turns to whether it should be classified under the optical instrument subheading.

**B. Optical Instrument**

In determining whether the TopEye is an optical instrument under HTSUS 9015.80.20, the court must determine: 1) whether the device acts on or interacts with light; 2) whether the device permits or enhances human vision through the use of one or more optical elements; and 3) whether the device uses the optical properties of the device in something more than a "subsidiary" capacity. See United States v. Ataka Am., Inc., 64 CCPA 60, 66, 550 F.2d 33, 37 (1977); see also Celestaire, Inc. v. United States, 120 F.3d 1232, 1233 (Fed. Cir. 1997).

There is no question that the TopEye "acts on or interacts with light," in that it projects a laser - a light beam - onto land in order to measure distances. The TopEye "enhances human vision" because the device employs cameras and mirrors to produce images that the human eye would not otherwise be able to detect with any sort of accuracy or speed.[7] Heli-Support focuses

---

[7] Mirrors have been held to be "optical elements". See, e.g., Celestaire, 120 F.3d at 1233 (qualifying a "split-image mirror" as an "optical element"); Engis Equip. Co. v. United States, 62 Cust. Ct. 29, 294 F. Supp. 964, 967 (1969) (considering a mirror an optical element in an autocollimator).

its objection on the third requirement, arguing that the TopEye's cameras and mirrors are merely subsidiary optical elements and, consequently, do not use light in the way the term "optics" is used in the tariff schedule.  This argument ignores the integral nature of those components in producing TopEye's imagery.  The core purpose of the TopEye is to create images through the use of specialized optical technology.  Accordingly, the TopEye satisfies this "optical element" portion of the "surveying device" test.

### Conclusion

The TopEye meets the HTSUS 9015.80.20 requirement of being both a surveying device and an optical instrument.  The court finds that Customs correctly classified the TopEye under that provision and, therefore, summary judgment must be entered in favor of the United States.

_____
Jane A. Restani
JUDGE

Dated:  New York, New York

This 13th day of March, 2002.