(C.D. 2074)

GENERAL CHAIN & BELT CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 31, 1959)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation described on the invoice as "Conveyor Chain" was classified by the collector of customs as articles, not specially provided for, in chief value of·metal, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

Plaintiff invokes various provisions of the statutes providing lower rates of duty than that assessed, but has abandoned all, except the following:

That the importation consists of chain used for the transmission of power, and parts thereof, as provided for in paragraph 329 of said act (19 U.S.C. § 1001, par. 329), as modified by Presidential proclamation to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by T.D. 53877, and dutiable at the rate of 12½ per centum ad valorem.

Alternatively, that the merchandise should be classified as chain or chains of all kinds, made of iron or steel, as provided in said paragraph, as modified by the Torquay protocol to said general agreement, 86 Treas. Dec. 121, T.D. 52739, and accordingly dutiable at seven-sixteenths of 1 cent per pound, or at the appropriate rate according to diameter.

The pertinent text of the competing provisions, above referred to, reads as follows—

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

    \*        \*        \*        \*        \*        \*        \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

Woven wire fencing and woven wire netting, * * *

\*      \*      \*      \*      \*      \*      \*

Other (except slide fasteners and parts thereof)___ 22½% ad val.

Paragraph 329 of the basic act:

* * * chains of iron or steel, used for the transmission of power, of not more than two-inch pitch and containing more than three parts per pitch, and parts thereof, finished or unfinished, 40 per centum ad valorem; all other chains used for the transmission of power, and parts thereof, 35 per centum ad valorem; * * *.

Paragraph 329, as modified by Presidential proclamation to the General Agreement on Tariffs and Trade, *supra*:

All other chains used for the transmission of power, and parts thereof_____ 12½% ad val.

Paragraph 329, as modified by the Torquay protocol to said general agreement, *supra*:

Chain and chains of all kinds, made of iron or steel (not including chains used for the transmission of power, parts thereof, or anchor or stud link chain):

    ¾ inch or more in diameter_____ 7⁄16¢ per lb.
    Under ⅜ but not under 5⁄16 inch in diameter_____ ¾¢ per lb.

During the course of the trial of this case, the following exhibits were received in evidence:

Exhibit 1 represents the subject merchandise, except as to length. As imported, it is 25 feet long and has 76 links.

Illustrative exhibits 2, 3, 4, and 5 are samples of various types of chains.

Collective exhibit 6 represents exhibit 1 in a knockeddown condition.

Illustrative exhibit 7 is a photograph showing two ways in which the merchandise is used for two different purposes.

Illustrative exhibit 8—sample of a type of roller chain in a knockeddown condition.

Illustrative exhibit 9—two pages of a catalog, illustrating different kinds of attachments to adapt roller-type power transmission chain to specific conveying purposes.

Illustrative exhibit 10—a length of roller-type chain with various kinds of links, illustrating how certain accessories are used to adapt roller-type power transmission chain to specific conveying purposes.

Illustrative exhibit 11—booklet with transparent pages, illustrating each component of a roller-type power transmission chain.

Illustrative exhibit 12—two samples of roller chains, one with rectangular side plates, the other with figure 8 side plates.

An oral stipulation of fact was entered into by the parties, whereby it was agreed that all of the items appearing on page 4 of the invoice under the heading of "Conveyor Chain" are composed of steel and have a 4-inch pitch. It appears from the record in this case that the chain in controversy contains more than three parts per pitch.

Joseph Joy, the only witness in the case, testified on behalf of plaintiff. The record discloses that he is managing director and chief engineer of the General Chain & Belt Co., plaintiff herein, his duties being to supervise engineering and engineering sales in the marketing of chains and sprockets, having had 10 years' experience with that company. However, he had a total of 46 years' experience in the manufacture, design, and installation of chains used for transmission of power and was shown to be exceptionally well qualified to testify concerning the various types and uses of chains.

Joy defined chain as follows: "A chain is a number of pieces of solid material connected together so that there is articulation at the joint." He enumerated roller chain, silent chain, block chain, and pintle chain as the principal types of transmission chains, with all of which he was familiar. He identified exhibit 2 as illustrating what is known as a silent chain, and exhibit 3 as a so-called block chain. Exhibit 4, he described as a pintle chain, and exhibit 1 as a type of roller chain. He stated that illustrative exhibit 5 represented types of roller chain, one type having a short pitch; the other, a long pitch, but both having a bushing and a roller.

The witness described a "roller chain" as "* * * anything designed to mesh with a sprocket and a bicycle chain would be a type typical of a roller chain. It consists of a series of flat plates assembled with cylindrical parts which are the pin, the bushing, and the roller." The word "pitch" connotes the distance from the center of one pin to the center of the next.

Joy stated that there is no distinction between a conveyor chain and a power transmission chain. A conveyor chain is a power transmission chain that is made available for conveying, and all power transmission chains can be used for conveying articles.

Referring specifically to exhibit 1, the witness stated that it was "used on industrial equipment to operate machinery which requires power for the conveying of articles," being motivated by a driving sprocket with which the chain will mesh, or it could also be used on a meshing chain, as shown on illustrative exhibit 7.

With reference to exhibit 7, the witness stated—

In this particular application, it was considered better to drive the conveying chain by means of a meshing chain commonly known as a caterpillar form of drive. Dogs to simulate sprocket teeth are fitted to one chain and by these dogs engaging with another chain, they cause the other chain to move forward just in the same manner that they would if the chain was driven by a sprocket.

He described the chain in exhibit 7 as one in which "* * * the pin is hollow and the article to be conveyed has a mating pin which fits into the bore of the hollow pin," being operated horizontally and used by "Bakery machinery manufacturers." The witness also testified that—

* * * There are thousands of feet in virtually every modern bakery.

\*      \*      \*      \*      \*      \*      \*

In their proofer and bread cooler, after the dough comes out of the oven and dumped on to a conveyor, it is elevated on to a cooler and there may be as many as four or five loads and when the bread reaches the end of the cooler, it is taken to another conveyor which takes it to the bread wrapper. The ovens also use the same chain but somewhat shorter in length.

When Joy was asked what other industries use this type of chain, he stated that the television business used them to carry the tubes from one place to the other in the plant. Further, he said—

* * * Really, the industries are so numerous, it is a little difficult to go beyond the bakery business but we have one of these chains conveying hams. We have one that conveys cases of liquor; it does [sic] on the floor for loading purposes.

There does not appear to be any judicial precedent directly in point which would be decisive of the present issue. Reference is made, however, to the case of *United States* v. *Henry Greenberg & Bros. Export & Import Co., Inc.*, 44 C.C.P.A. (Customs) 48, C.A.D. 636, wherein, in reversing the court below, it was held that roller chain in 100-foot rolls, designed for use on bicycles, constituted chains used for the transmission of power. It was held further by the court, in that case, that the provision for "Chains of iron or steel, used for the transmission of power," would include chain as a material for making chains as well as chains as units, following the well-settled principle invoked in statutory interpretation that the singular includes the plural, and vice versa, unless a contrary intention is shown.

In the absence of judicial precedent, it is interesting to note that, in the Summary of Tariff Information (1929), prepared for use by the House Committee on Ways and Means in connection with the preparation of the Tariff Act of 1930, with regard to paragraph 329, under the caption "CHAINS"—"Description and uses," the following appears:

The chains included under this paragraph are usually composed of wrought iron, steel, or malleable iron. Structurally, chains are of two types: (1) Block or sprocket chains, each link of which consists of several pieces of metal, joined together by cylindrical pins. These chains are mostly used for transmitting power. (2) Coil chains, made of interlocking oval links, each link consisting of a single piece of metal. The links may be studded by a crosspiece in the center which makes them stronger. In making coil chains of over 2-inch links, power presses are used to form the links and steam hammers to weld them.

The *eo nomine* provision for chains used for the transmission of power first appeared in the Tariff Act of 1930. In the prior acts of 1922 and 1913, in addition to the provision for chain and chains of all

kinds, made of iron or steel, sprocket and machine chains were provided for. (The 1922 act also provided for anchor or stud link chain.)

In the Summary of Tariff Information (1920), with relation to the chain provision, the following appears under the caption "General Information"—"Description and uses":

Structurally, *chains made of iron or steel* may be divided into those (1) whose separate links are of a single piece of metal and those (2) with links of several pieces of metal. The first are used generally for fastening objects together or supporting or lifting weights. Such chains, if small, are chiefly made by machinery, but larger sizes are usually handmade. Chains for cranes, ships' cables, dredges, etc., have each link welded by hand, often both formed and welded from the rolled bar iron. Those of the second class are known as *sprocket* or *machine chains* and are used for transmitting power. In certain of these each link is made of several pieces of metal connected by rivets, bolts, or steel screws, and so formed as to engage with the teeth of a sprocket wheel. The bicycle chain is a familiar example. [Italics quoted.]

From the evidence of record in this case, it seems clear that the merchandise invoiced as "Conveyor Chain," by virtue of its construction and use, comes within the purview of the *eo nomine* provision for chains used for the transmission of power, in paragraph 329, as modified, *supra.*

Defendant, in its brief, contends—

It is submitted that the imported article used in and by itself does not transmit motion, and that when used as chain A is used in the illustration [exhibit 7], it still is not a chain used for the transmission of power, because said chain A is not being used to transmit power, it is being used, by means of dogs or lugs added to it by the customer after importation to move chain B.

We do not believe that chain is any the less transmission chain because of the fact it meshes with a meshing chain equipped with dogs or lugs rather than directly with a sprocket or gear. In either event, it is considered that the chain does transmit power.

In the instance of bicycle chain, when force is applied to the pedals of a bicycle by the rider, it is transmitted to the sprocket or gear attached thereto and is relayed through the bicycle chain which meshes with the sprocket on the rear wheel of the bicycle. It is evident that the power applied by the rider is transmitted by means of the bicycle chain. So, too, in the case of the imported so-called "Conveyor Chain," the operation of which was described by witness Joy as follows—

The prime mover is an electric motor which is connected by a chain drive to a speed reducer, the output shaft of which is vertical. On the lower end of the output shaft is mounted a sprocket wheel. Some distance away, there is another sprocket wheel, an endless chain is wrapped around these two sprockets. This endless chain is fitted with dogs which function the same as a sprocket tooth and fit into the space between the roller of the chain to be moved. As the motor is started up, these teeth engage with the second chain causing it to move.

\*          \*          \*          \*          \*          \*          \*

This type of driving is called a caterpillar motion.

The end result in the case of the bicycle is that the rider is conveyed or transported and, in the case of the chains presently in issue, bakery and other products are moved from place to place, the operation in each instance being performed by virtue of chain which transmits power from a prime source.

The testimony of record, coupled with the physical examination of the exhibits, satisfies us that the imported chain here under consideration is a power transmission chain and has been so used for many years. It seems clear from the record that the chain transmits power from its meshing sprocket wheel drive or meshing chain and is so designed to transmit power throughout its length and convey articles that may be attached to it, such as bread or empty bread tins in a bakery; tubes in a television plant; cases of liquor in a store; molds in a smelter; sugar bags in a refinery; and in many industries where conveying or power transmission chains are used.

In view of the conclusion we have reached herein, it becomes unnecessary for us to consider the alternative claim of plaintiff for classification of the items in issue as "Chain and chains of all kinds, made of iron or steel," inasmuch as the provision for "All other chains used for the transmission of power, and parts thereof," being a use provision, takes precedence. *United States* v. *Henry Greenberg & Bros. Export & Import Co., Inc., supra.*

For the foregoing reasons, we hold that the items described on the invoice as "Conveyor Chain" should properly have been classified as "All other chains used for the transmission of power, and parts thereof," in paragraph 329 of the Tariff Act of 1930, as modified, *supra*, and dutiable at the rate of 12½ per centum ad valorem, as alleged by plaintiff. That claim in the protest is, therefore, sustained, and judgment will issue accordingly.