(C.D. 2570)

NOVELTY IMPORT CO., INC., ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 9, 1965)

*Siegel, Mandell & Davidson* (*Richard H. Abbey* of counsel) for the plaintiffs. *John W. Douglas,* Assistant Attorney General (*Glenn E. Harris,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The merchandise of these three protests, consolidated for trial, consists of cigarette holders, approximately 13¼ inches in length, product of Japan. Two of the protest invoices describe the article as a 'Cigarette Kisseru." The third protest invoice describes it as a "Smoking Cigarette Holder." The collector classified these articles as cigarette holders under paragraph 1552 of the Tariff Act of 1930, and assessed duty at 2½ cents each and 15 per centum ad valorem, which is the modified rate prescribed in the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739) for:

Cigar and *cigarette holders,* not specially provided for, of whatever material composed, and in whatever condition of manufacture, whether wholly or partly finished, or whether bored or unbored. [Emphasis added.]

Plaintiffs claim that these cigarette holders are novelty items, not chiefly used as cigarette holders, which should be classified under the catchall metal paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108), dutiable at 19 per

centum ad valorem. Paragraph 397, as modified (T.D. 54108), provides as follows:

Articles or wares not specially provided for, whether partly or wholly manufactured: [no rate specified.]

\*        \*        \*        \*        \*        \*        \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer: [no rate specified.]

\*        \*        \*        \*        \*        \*        \*

Not wholly or in chief value of tin or tin plate: [no rate specified.]

\*        \*        \*        \*        \*        \*        \*

Other, composed wholly or in chief value of
iron, steel, brass, bronze, zinc, or aluminum
[exceptions omitted] _____ 19% ad val.

On trial, plaintiffs abandoned their claim, protest 62/1013, for duty at 30 per centum ad valorem under paragraph 1552, in favor of an amended claim under paragraph 397, similar to the claim of the other two protests.

The record includes various exhibits introduced by plaintiffs and the testimony of three witnesses adduced by plaintiffs. Defendant introduced no evidence. It was stipulated that the three articles of collective illustrative exhibit 1 "are representative of the items [cigarette holders] on the invoice, except for the one which is red, and it is representative in every respect, except color, of the item on the invoice, which is black." (R. 8.) The articles of collective exhibit 1 resemble conventional cigarette holders, except that they are longer than cigarette holders often are. They measure approximately 13¼ inches in length. Each holder has a metal mouthpiece at one end and a metal holder for a cigarette at the opposite end of what appears to be a wooden reed-like shank. These metal ends easily are pulled off the shank, and it takes only brief examination to identify the cigarette holders as inexpensive manufactures.

Counsel also, by stipulation subsequent to trial, agree that these cigarette holders are made of materials "in chief value of either iron, steel, brass, bronze, zinc, or aluminum and that said merchandise is not plated with platinum, gold, or silver, or colored with gold lacquer."

Mr. Thomas B. Donohue, salesman for Goldfarb Novelty Corp., testified that his firm has been in the business of selling souvenirs and novelties for about 50 years. He has been with the firm 9 of the 15 years during which he has been selling novelties. He is a contributing editor to novelty trade magazines. Novelty Import Co., Inc., one of the plaintiffs, is a subsidiary of Goldfarb Novelty Corp.

Mr. Donohue said his sales territory is in New York (exclusive of

New York City), New Jersey, and parts of Pennsylvania and Ohio. He has met, at trade shows, traders in novelties from all over the United States. Mr. Donohue identified collective exhibit 1 as an item which he sold to jobbers and retail stores in the souvenir business, in tourist areas of Atlantic City, Niagara Falls, at the World's Fair, and other "historic" places. These, he said, are displayed and sold as souvenir and novelty articles, mostly to women and teenages, for about 25 cents each retail. (R. 14.) He has never sold these cigarette holders to tobacco shops or department stores, or seen them sold there.

Mr. Donohue further testified that cigarette holders, similar to collective exhibit 1, are bought on "impulse," as fun items, and that this "impulse" buying came in with the advent of the "giant novelty item." He did not know whether the cigarette holders of collective exhibit 1 could be used to smoke cigarettes, since his firm is not interested in the functional smoking quality of the holders. Plaintiff, nonetheless, concedes that a cigarette could be inserted in the cigarette holder of collective exhibit 1, and that a cigarette which is so inserted could be lighted and smoked. (R. 23.)

Mr. Robert Oumano, secretary-treasurer of Franco American Novelty Corp., importer, distributor, and manufacturer of various kinds of novelties for 48 or 50 years, testified that he is familiar with all phases of his firm's business, including buying and selling for the firm. He had bought articles like collective exhibit 1. He sold them chiefly to "trick and joke" stores (R. 26) all over the United States. He described how, in making up orders, the shipping clerk very often had to put loose stems and ends on the shanks of the cigarette holders before shipment.

He did not know whether illustrative exhibit 2, representative of the cigarette holder imported by his firm and physically the same type of cigarette holder as exhibit 1, could be used to smoke a cigarette, as the smoking quality of the cigarette holder did not matter to his firm. He never saw anyone smoke with these cigarette holders and, on several occasions, he tried unsuccessfully to buy a cigarette holder like exhibit 3 (brought to court by Mr. Oumano and physically the same as exhibits 1 and 2) in the shop of the Union News Co., in a Long Island Railroad Station; in a tobacco shop on 31st Street, New York City; and in another tobacco shop at the corner of 30th Street and Sixth Avenue, New York City.

Mr. Adonis Fiakos, a clerk for Siegel, Mandell & Davidson, counsel for plaintiff, stated that he recognized exhibits 1 and 2; that in the company of counsel for plaintiff he proceeded to four tobacco shops where they purchased plaintiff's collective exhibit 4 cigarette holder; that they asked for cigarette holders longer in length than exhibit 4,

but were told the shops did not have any; that they found some in one tobacco shop which also sold novelty items, and there they purchased plaintiff's exhibit 5. Mr. Fiakos testified that he is a smoker; that he tried to smoke with each of exhibits 1, 2, 3, 4, and 5; that two of the cigarette holders of exhibit 1 were functional for smoking, and one was not, but on the stand he could not identify which two were functional; that exhibits 4 and 5 were both functional for smoking; that the smoking pleasure with each of the exhibit cigarette holders was different; that it was difficult to draw smoke through exhibits 1 and 2; that exhibit 4 gave an enjoyable smoke, and drew almost as well as without a holder. It was demonstrated that exhibit 5, when disassembled, is convenient to carry in the pocket, and that exhibit 1 protrudes from the pocket.

It was stipulated that exhibit 3 could not be used to smoke a cigarette. (R. 50.) In his opinion exhibits 1, 2, and 3 were not functional to smoke with, but exhibits 4 and 5 smoked easily.

Recalled to the stand, Mr. Oumano (of Franco American Novelty Corp.) said that exhibits 2 and 3 are sold both as separate articles and in kits with a beret, a beard, and "specs" (for men) or with a beret and wig, jumbo eyelashes, and eyeglass frames (for women), and that both such kits are in a polyethylene bag. He did not know how exhibit 1 is sold.

In *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699, a leading case construing what are and what are not *eo nomine* classifications, our appeals court said:

The Government argues at great length that the paragraph 411 provision of "baskets" is an "eo nomine" provision. Of course it is. This is no more than a way of saying that baskets are provided for in paragraph 411 by the term "baskets" and calling this self-evident fact by a Latin name does not change anything. On the other side the same may be said for the attempt to pin the "eo nomine" label on the paragraph 412 provision for parts of furniture. The real problem in this case is simply whether the imported articles are in fact "baskets". [P. 73.]

Here, likewise, the real problem is whether these imported articles are, in fact, cigarette holders, as defendant claims.

The term "cigarette holders" is only one of several articles descriptively designated in paragraph 1552, at differing duty rates, following the general heading "Pipes and smokers' articles." The articles designated in paragraph 1552 are all clearly of a kind that are used by smokers.

That this is the sense of paragraph 1552 is well established. *Knauth* v. *United States*, 1 Ct. Cust. Appls. 334, T.D. 31432; *United States* v. *Dunhill*, 13 Ct. Cust. Appls. 310, T.D. 41231.

The problem of judicially determining whether an article, resembling an enumerated article, is that article for purposes of tariff classification, is a problem that constantly recurs in litigation. Sometimes

the competition is between two specific enumerations. Sometimes, as here, it is between a provision for all forms of the enumerated article, not specially provided for elsewhere, on the one hand, and on the other hand a catchall provision for articles made of certain materials.

Typical decisions resolving this competition are: *United States* v. *Quon Quon Company, supra* (as to the tariff term "baskets") ; *Sears, Roebuck and Co.* v. *United States*, 46 CCPA 79, C.A.D. 701 (certain food covers, held not within the meaning of the tariff term "umbrellas") ; *M. Pressner & Co.* v. *United States*, 44 Cust. Ct. 10, C.D. 2145 (flimsily constructed miniature knives, classified by the collector as hunting knives, held not within that tariff term) ; *Paul E. Sernau, Inc.* v. *United States*, 46 Cust. Ct. 514, Abstract 65737 (toy pocket knives which could not be used for cutting, held not within the tariff term "pocket knives with folding blades") ; *United States* v. *Sears, Roebuck & Co.*, 27 CCPA 235, C.A.D. 91 (inexpensive small accordions made of paper, wood, and some metal, invoiced at 29 cents each, classified as toys, held not to be within the tariff term "musical instruments," as claimed) ; *B. Illfelder & Co.* v. *United States*, 57 Treas. Dec. 1012, Abstract 10614 (certain white clay pipes, suitable only for the amusement of children, held not within the tariff term "pipes") ; *Downing* v. *United States*, 9 Treas. Dec. 1012, T.D. 26454 (fans made of paper, not fitted for practical use for fanning purposes, held not within the tariff term "fans of all kinds") ; *United States* v. *The Baltimore & Ohio R.R. Co.*, 47 CCPA 1, C.A.D. 719 (decorative small cups and saucers, intended for use as novelty articles, held not tableware) ; similarly, *W. Kay Company, Inc.* v. *United States*, 53 Cust. Ct. 130, C.D. 2484 (decorative large cups and saucers, intended for use as novelty articles, held not tableware).

On the record before us, it appears that these cigarette holders of exhibit 1 are offered and sold as novelty items to stores catering to the "impulse" buying of those who seek souvenirs and "fun" articles. There is no evidence of record as to how these cigarette holders are, in fact, chiefly used. Exhibit 1 is, however, a "potent witness." *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995. These cigarette holders could be used to light and smoke a cigarette. However, their obvious cheapness, length, and lack of balance certainly do suggest that most smokers might not choose to use them for smoking, except perhaps as a stunt.

The issue is one as to the relative specificity of the two competing provisions. There are several guidelines, laid down in decided cases, which aid the court in considering relative specificity.

As between an *eo nomine* enumeration and an equally applicable enumeration by use, the use provision is generally (but not always) held to be the more specific. *Julius Forstmann & Co.* v. *United States*, 28 CCPA 222, C.A.D. 149; *M. Pressner & Co.* v. *United States*, 42

CCPA 48, C.A.D. 568; *Jack and Jill Togs, Inc.* v. *United States* (*W. T. Grant Co.*, Party in Interest), 47 CCPA 149, C.A.D. 749.

Where one provision is limited by the term "not specially provided for," and the other equally descriptive term is not thus limited, the nonlimited term is usually favored, provided it is otherwise equally applicable to the involved merchandise. *United States* v. *Alltransport, Inc.*, 44 CCPA 149, C.A.D. 653.

When both competing provisions are descriptive, or both are conditioned on use, the tariff term that more closely describes the article or its use, is the term that will prevail. *John J. Coates Co. et al.* v. *United States*, 44 CCPA 97, C.A.D. 643; *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 623.

Here, we have one descriptive enumeration, namely, cigarette holders, and another descriptive enumeration, namely, a manufacture in chief value of metal. Moreover, the provision for cigarette holders is broadly inclusionary of such holders. Modified paragraph 1552 provides for cigarette holders that are not elsewhere specially provided for, "of whatever material composed, and *in whatever condition of manufacture*, whether wholly or partly finished, or whether bored or unbored." [Emphasis supplied.]

As to length, the court may take judicial notice that a long cigarette holder is not *ipso facto* not a cigarette holder. Those of us who are old enough to have observed the smoking habits of the late President Franklin D. Roosevelt, recall that the cigarette holder he used was noticeably a long one.

If this is both a cigarette holder and a novelty item in the form of a cigarette holder, as it appears to be, we conclude that its tariff classification should be as a cigarette holder. There is no classification for novelty items in the form of cigarette holders. There is a classification for manufactures in chief value of metal, which these articles also are; but we find that this descriptive enumeration, according to material, is less specific, as to this merchandise, than the classification for cigarette holders.

The protest claims for paragraph 397 classification are overruled. All other claims, having been abandoned, are dismissed. Judgment will be entered accordingly.