**TRAVENOL LABORATORIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

C.D. 4812; No. 77–8–01757.

United States Customs Court.

July 27, 1979.

Barnes, Richardson & Colburn, Chicago, Ill. (Robert E. Burke, Donald J. Unger, and Mark S. Zolno, Chicago, Ill., on the briefs), for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City (Sidney N. Weiss and Susan Handler-Menahem, New York City, on the briefs), for defendant.

MALETZ, Judge:

This case which comes before the court on cross-motions for summary judgment involves the proper tariff classification of "solution administration sets" that were imported from Ireland and entered at the port of Charleston, S.C. between June and December of 1976.

Upon entry, the merchandise was classified by Customs under item 709.27 of the

Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, which covers medical, dental, surgical and veterinary instruments and apparatus and parts thereof, other, and assessed duty at the rate of 18% ad valorem. Plaintiff claims the proper classification is under item 772.65, TSUS, as modified by T.D. 68–9, which covers hose, pipe, and tubing, not specially provided for, of rubber or plastics suitable for conducting gases or liquids, with or without attached fittings, and carries a duty rate of 4% ad valorem.

### The Statutes

The following are the pertinent provisions of TSUS:

Classified under: Schedule 7, Part 2:

    Subpart B—Medical and Surgical Instruments and Apparatus; X-Ray Apparatus

   *    *    *    *    *    *    *

    Medical, dental, surgical and veterinary instruments and apparatus (including electro-medical apparatus and ophthalmic instruments), and parts thereof:

   *    *    *    *    *    *    *

       Other:

   *    *    *    *    *    *    *

709.27    Other .................. 18% ad val.

Claimed under: Schedule 7, Part 12:

    Subpart C—Specified Rubber and Plastics Products

*    *    *    *    *    *    *

772.65  Hose, pipe, and tubing, all the foregoing not specially provided for of rubber or plastics, suitable for conducting gases or liquids, with or without attached fittings ..... 4% ad val.

### The Facts

The material facts are not in dispute. They show that the imported solution administration sets are composed of various plastic and rubber parts which are fitted together in their imported state. An illustration of a set is depicted below:

The set—which is in chief value of plastic and used to conduct liquids—consists of approximately 70 inches of plastic tubing, a connector, a protector for the connector, a needle adapter, a protector for the needle adapter, a drip chamber, a Flashball injection site, and a Flo-Tool clamp. The interior fluid path of the set is sterile as imported.

On the face of the box in which the set is imported and marketed appears the following:

    Caution: Federal (U.S.A.) law restricts this
    device to sale by or on order of a physician.

The set is chiefly used in the intravenous administration of blood or other medical solutions to patients and operates in the following manner: The connector is inserted into the outlet of a solution container which is suspended. The drip chamber is half filled, whereupon the Flashball injection site over the needle adapter is grasped and its protector removed. A needle is then attached to the needle adapter and air is removed from the set. The Flo-Trol clamp is then closed and venipuncture performed. After this, the Flashball is squeezed and released and, if the needle is properly inserted into the vein, the blood flows back into the needle adapter. The Flo-Trol clamp is then moved to regulate the flow of the medical solution to the patient.

## Opinion

■ It is undisputed that the sets are medical apparatus within the meaning of item 709.27. However, plaintiff contends that the sets are specifically provided for under item 772.65 as tubing and that under the principle of relative specificity its claimed classification under item 772.65 is more specific than the government's classification under item 709.27. The court cannot agree with this contention. Rather, for the reasons that follow, it is concluded that item 709.27 covering medical apparatus is more specific than the provision in item 772.65 for tubing, not specially provided for, of plastics suitable for conducting liquids and that the government's classification under item 709.27 must therefore be upheld.*

In considering the relative specificity of the competing provisions in question, it is to be noted that under TSUS general interpretative rule 10(c) an article described in two or more provisions of TSUS is classifiable under the provision which most specifically describes it.

■ In determining relative specificity, it is settled that in the absence of legislative intent to the contrary—which intent is lacking here—a product described by both a use provision and an eo nomine provision is generally more specifically provided for under the use provision. See, e. g., United States v. Snow's United States Sample Express Co., 8 Ct.Cust.Appls. 351, T.D. 37611 (1918); J. J. Boll v. United States, 34 Cust.Ct. 218, 227, C.D. 1707 (1955); R. W. Smith v. United States, 41 Cust.Ct. 78, C.D. 2024 (1958); General Chain & Belt Co. v. United States, 42 Cust.Ct. 115, C.D. 2074 (1959); Novelty Import Co., Inc., et al. v. United States, 55 Cust.Ct. 169, 173–174, C.D. 2570 (1965), appeal dismissed, 53 CCPA 155 (1966); Sturm, A Manual of Customs Law (1974), p. 242 et seq.

■ Applying this rule of general construction, "[t]here is no doubt * * * that item 709.27 [covering medical apparatus] is a use provision and, as such, classification thereunder is determined by chief use." University of Oregon v. United States, 65 Cust.Ct. 316, 318, C.D. 4095 (1970). On the other hand, item 772.65—the provision for tubing—is not a use provision but an eo nomine provision of the "basket" type. An eo nomine provision is one which names a specific product or describes a commodity by a specific name. See, e. g., Sturm, supra, pp. 215–216. The fact that an eo nomine provision may have some limitations does not remove it from the category of an eo nomine provision. See United States v. Charles R. Allen, Inc., 37 CCPA 110, 121, C.A.D. 428 (1950). Thus, the requirement that the tubing which is covered by item 772.65 must be suitable for conducting gases or liquids merely limits or restricts the type of tubing which may be classified under that eo nomine provision.

The conclusion thus becomes apparent that under the general rule of construction that a use provision is more specific than an eo nomine provision, item 709.27 covering medical apparatus is more specific than item 772.65 covering tubing.

■ Moreover, where, as here, one provision (i. e., the tubing provision) is limited by a "not specially provided for" clause and the competing provision (i. e., the provision covering medical apparatus) is not so limited, the nonlimited term is generally favored, absent a contrary legislative intent which is not present here. See, e. g., United States v. Alltransport, Inc., 44 CCPA 149, 154, C.A.D. 653 (1957); Novelty Import Co., Inc. v. United States, supra, 55 Cust.Ct. at 174. Put otherwise, "[b]asket clauses and other provisions in tariff statutes are often followed by the words 'not specially provided for,' thus indicating that they are not to prevail where the article is specially

---

* In addition to the issue of relative specificity, defendant argues that the imported sets are "more than" plastic tubing with fittings and hence are not covered by item 772.65, as plaintiff contends. However, it is unnecessary to reach this question in view of our disposition of the case on the basis of relative specificity. Thus the court assumes arguendo that the imported sets are not "more than" plastic tubing with fittings and are accordingly covered by item 772.65.

provided for elsewhere." *Sturm, supra,* at p. 249.

Plaintiff, however, asserts that the provision for medical apparatus covers such a broad category that it does not "specially provide" for the imported merchandise. In this connection, plaintiff relies on *United States v. Ampex Corp.,* 460 F.2d 1086, 59 CCPA 134, C.A.D. 1054 (1972), where the court held that a provision for insulated electrical conductors with fittings was more specific than a competing provision for television apparatus on the ground that the provision for such conductors more narrowly and specifically described the importations than the provision for television apparatus. *Ampex,* though, is quite distinguishable from the present case. A major difference is that the provision for insulated electrical conductors does not contain a "not specially provided for" clause. By contrast, in the present case the provision for tubing covers only tubing "not specially provided for" thus indicating that the provision for tubing may not prevail since the importation here in issue is "specially provided for" elsewhere as medical apparatus.

It is to be added that there is nothing in *Ampex* suggesting that the provision for television apparatus does not "specially provide for" such apparatus. Indeed, the court in *Ampex* had no occasion even to consider that question. The fact is that the term "specially" as used in a "not specially provided for" clause does not require the extreme narrowness of scope which plaintiff contends is required. See, e. g., *Arthur J. Humphreys v. United States,* 407 F.2d 417, 56 CCPA 67, C.A.D. 956 (1969), where the court held that a provision covering other radio broadcasting apparatus and parts thereof was more specific than a provision covering furniture not specially provided for. Hence, the court in *Humphreys* necessarily concluded that the provision covering other radio broadcasting apparatus and parts "specially provided for" the importations there in issue. By the same token, the provision covering medical apparatus "specially provided for" the importations here in question.

Plaintiff also relies on *Max B. Heim Corp. v. United States,* 28 Cust.Ct. 62, C.D. 1389 (1952), where the court held that gelatin spangles were more specifically provided for under the *eo nomine* provision for spangles not specially provided for, rather than as manufacturers wholly or in chief value of gelatin. That case, too, is quite distinguishable from the case at bar. For in *Heim,* the court held that an *eo nomine* provision containing a "not specially provided for" clause is more specific than a *general* provision for manufactures of gelatin.

In the present case by contrast the competing provisions are not an *eo nomine* provision and a *general* provision but an *eo nomine* provision and a *use* provision. In that circumstance, the *eo nomine* provision with the limiting "not specially provided for" clause is less specific and the merchandise is more specifically described in the provision for medical apparatus.

For the foregoing reasons, defendant's motion for summary judgment is granted; plaintiff's cross-motion for summary judgment is denied; and the action is hereby dismissed.