**CZARNIKOW–RIONDA COMPANY**

v.

**UNITED STATES.**

C.D. 4229;  Protest Nos. 68/39657–18979,
68/39658–18980.

United States Customs Court,
Third Division.

June 8, 1971.

Barnes, Richardson & Colburn, New York City (Rufus E. Jarman, Jr., New York City, of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Andrew P. Vance and Frederick L. Ikenson, New York City, trial attorneys), for defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge.

ROSENSTEIN, Judge:

The merchandise involved in the two consolidated protests herein consists of two shipments, totaling 13,247,590 pounds, of raw Philippine sugar entered at the port of New Orleans in November 1964. Plaintiff does not dispute the classification and assessment for duty of the importations under TSUS item 155.20 as "Sugars * * *" at $0.0010173 and $0.0010184 per pound based upon the sugar degree content as determined by polariscopic test; however, it challenges the assessment of additional duties of $0.0053 per pound under TSUS item 901.00 which provides for "Sugars, * * * provided for in items 155.20 * * *, if not to be further refined or otherwise improved in quality, * * *", at a rate of duty "The same as the tax imposed under sec. 4501, I.R.C. [Internal Revenue Code]."[1]

Defendant's position is that item 901.00 is governed by General Interpretative Rule 10(e) (ii) of TSUS, which states:

For the purposes of these schedules—

* * * * * *

(e) in the absence of special language or context which otherwise requires—

* * * * * *

(ii) a tariff classification controlled by the actual use to which an imported article is put in the United States is satisfied only if such use is intended at the time of importation, the article is so used, and proof thereof is furnished within 3 years after the date the article is entered;

and that plaintiff failed to comply with this rule by furnishing within the prescribed three year period proof that the merchandise was further refined or otherwise improved. Defendant also contends that, even if the rule were inapplicable hereto, plaintiff has failed to prove that the sugar was in fact further processed after importation.

Plaintiff claims that Rule 10(e) (ii) is not applicable to item 901.00; that it has established, via stipulation (set out *infra*) and evidence adduced at the trial, that the merchandise was further processed after importation; and that the government's position herein, if sustained would result in "double taxation".

Plaintiff conceded at the hearing that no processing certificate was filed within three years after the date of entry with respect to 12,356,870 pounds of sugar and, after submission of the case, conceded in the brief that it had presented no proof of such filing within that same period for the remaining 890,720 pounds of sugar under protest.

The parties stipulated at the trial that—

* * * statements of processing have been prepared and furnished defendant which indicate that 11,094,560 pounds of sugar from entry 6724 of November 25, 1964, and 1,228,240 pounds of sugar from entry 6950, of November 30, 1964, were subject to the usual refining processes of a cane sugar refinery, including centrifuging, washing, melting and filtering, which statements would have satisfied the defendant that such sugar was refined or otherwise improved in quality within the meaning of Item 901.00 of the Tariff Schedules of the United

---

1. The tax rate imposed upon manufactured sugar under I.R.C. § 4501(a) (26 U.S.C. 4501(a)), as amended by Pub.L. 87–456, § 302(a) (Tariff Classification Act of 1962), is "0.53 cent per pound of the total sugars therein."

States had said statements been filed within the three year period which defendant claims is required by General Headnote 10(e) (ii), Tariff Schedules of the United States.

Plaintiff called four witnesses who testified relative to the purchase, shipment, and treatment subsequent to importation of the subject merchandise, and to the payment of internal revenue tax thereon. Defendant placed in evidence copies of two receipts, a voucher and a tax return, all dated 1965, of Godchaux Sugar Refining Company, which had purchased some of the raw sugar from the importer.

The pertinent provisions of the Tariff Schedules of the United States are as follows:

## APPENDIX TO THE TARIFF SCHEDULES

*Appendix Headnotes*:

1. The provisions of this Appendix relate to legislation and to executive and administrative actions pursuant to duly constituted authority under which—

(a) one or more of the provisions in schedules 1 through 8 are temporarily amended or modified, or

(b) additional duties or other import restrictions are imposed by, or pursuant to, collateral legislation.

2. Unless the context requires otherwise, the general headnotes and rules of interpretation and the respective schedule, part, and subpart headnotes in schedules 1 through 8 apply to the provisions of this Appendix.

## PART 1. TEMPORARY LEGISLATION

Subpart A. Temporary Provisions for Additional Duties

*Subpart A headnotes*:

1. The duties provided for in this subpart are cumulative duties which apply in addition to the duties, if any, otherwise imposed on the articles involved. The duties provided for in this subpart apply only with respect to articles entered during the period specified in the last column.

2. Sections 336 and 350 of this Act (the so-called flexible tariff and trade-agreements provisions, respectively) shall not apply with respect to the duty provided for in item 901.00.

3. With respect to any articles upon which the duty imposed under item 901.00 has been paid and which, on the date of termination of the tax provided for in section 4501, I.R.C., are held by the importer and intended for sale or other disposition, there shall be refunded (without interest) to such importer an amount equal to the duty paid on such articles under item 901.-00, if claim for such refund is filed with the Secretary or his delegate within 90 days after the date of termination of the tax.

901.00 Sugars, sirups, and molasses provided for in items 155.20 to 155.-31, inclusive, of part 10A of schedule 1, if not to be further refined or otherwise improved in quality, and articles of sugars, sirups, and molasses of the kinds described in such items, all the foregoing (except sugars, sirups, molasses, or articles to be used as livestock feed, or in the production of livestock feed, or for the distillation of alcohol) ............. The same as the tax imposed under sec. 4501, I.R.C.

Plaintiff asserts the inapplicability of Rule 10(e) (ii) on the grounds that the challenged assessment is an excise tax and not a "regular" customs duty, and that item 901.00 is neither a "tariff classification" nor an "actual use" provision (brief, 14, 16).

We do not agree.

Item 901.00 is derived, as plaintiff notes, from I.R.C. § 4501(b) (26 U.S.C. § 4501(b)), which imposed a tax on manufactured sugar,[2] or articles in chief value thereof, imported into the United States. This provision, which was a nonpermanent legislative measure, was assimilated with other temporary legislation in the appendix to the tariff schedules as part of the Tariff Commission's scheme to merge into a single document the provisions of the Tariff Act of 1930 "and all related provisions found in the Internal Revenue Code and elsewhere under which imported articles are classified for tariff purposes, * * *."[3]

■ Whether the revenue obtained under item 901.00 be denominated a "duty," as it is in the tariff schedules (Appendix, Part 1, Subpart A headnotes, *supra*) or a "tax," as plaintiff refers to it, is irrelevant for customs purposes. Regardless of how taxes may be designated by Congress, if they are imposed on goods while in customs custody, i. e., while they retain their distinctive character as imports, they are essentially customs duties, Faber, Coe & Gregg, Inc. v. United States, 97 F.2d 115, 26 CCPA 95, T.D. 49638 (1938); Faber, Coe & Gregg, Inc. v. United States, 19 CCPA 8, T.D. 44851 (1931); Shaw & Co. et al. v. United States, 11 Ct.Cust.Appls. 226, T.D. 38990 (1922); United States v. Shallus & Co., 9 Ct.Cust.Appls. 168, T.D. 37999 (1919); The Best Foods, Inc. v. United States, 50 Cust.Ct. 94, C.D. 2396, 218 F.Supp. 576 (1963), modified on other grounds, 51 CCPA 1, C.A.D. 827 (1963); and they are treated procedurally as duties.[4] Harold S. Lazar v. United

2. I.R.C. § 4502(3) (26 U.S.C. 4502(3)), provides that—

> The term "manufactured sugar" means any sugar derived from sugar beets or sugarcane, which is not to be, and which shall not be, further refined or otherwise improved in quality; except * * *. The grades or types of sugar within the meaning of this definition shall include, but shall not be limited to, * * * raw sugar, sirups, molasses, and sugar mixtures.

3. *Tariff Classification Study, Submitting Report*, Nov. 15, 1960, p. 10.

Section 4501(b) was not adopted wholesale, but "simplified and clarified," the Tariff Commission explained in the Tariff Classification Study, Schedule 8, pp. 98 and 99, as follows:

> *Subpart A—Temporary Provisions for Additional Duties*
>
> At the present time section 4501(b) of the Internal Revenue Code is the only legislation which falls within this subpart. This section imposes taxes (the equivalent of duties) on imports of manufactured sugar if such sugar is not to be further refined or otherwise improved in quality in the United States and also on imports of articles in chief value of manufactured sugar. These import taxes are often referred to as "import compensating taxes" in that, with respect to sugar imports not to be further refined or improved, they compensate for the taxes at the same rates imposed under IRC section 4501(a)

> upon manufactured sugar manufactured in the United States.
>
> The import compensating tax is payable in addition to the duties, if any, otherwise imposed on the articles involved.
>
> * * * * *
>
> In item 901.00 of this subpart, the import compensating tax provisions are simplified and clarified to provide a flat rate of .53 cents per pound of total sugars—a weighted average of the various rates currently applicable to the different types of manufactured sugar. As indicated, the import tax applies to sugar not for further refining or improvement in quality—that is, sugar to be consumed or incorporated in other products in its existing form with no loss of sugars as occurs in refining.
>
> * * *

4. Such treatment is in accord with Congressional intent. I.R.C. § 4504 (26 U.S.C. § 4504) which, with section 4501(b), was subsequently repealed by Pub.L. 87–456, § 302(d), had provided that—

> The tax imposed by section 4501(b) shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930 (46 Stat. 590; 19 U.S.C., chapter 4) and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such act, except that for the purposes of sections 336 and 350 of such act (the so-called flexible tariff and trade agreements pro-

States, 38 Cust.Ct. 23, C.D. 1838 (1957); Bercut-Vandervoort & Co., Inc. v. United States, 35 Cust.Ct. 113, C.D. 1730 (1955). See also Marianao Sugar Trading Corp. v. United States, 41 CCPA 236, C.A.D. 557 (1954).

Furthermore, a determination as to assessment of duties under item 901.00 involves a classifying function which is based upon the character of the merchandise and its use subsequent to importation. An analogous situation arose in Bradford Co. et al. (United States impleaded) v. American Lithographic Co., 12 Ct.Cust.Appls. 318, T.D. 40318 (1924), wherein the appellant-importer contended that the collector's determination as to whether or not merchandise was legally marked under the provisions of section 304(a) of the Tariff Act of 1922 did not amount to classification of the merchandise and, therefore, was not a protestable action under section 516(b) of that act which allowed an American manufacturer under certain conditions to protest the classification of imported merchandise and the rate of duty assessed thereon. The appellate court disposed of this argument thusly:

> Classification of imported merchandise is the process or act of grouping, or arranging merchandise into classes; it is a process which may be based upon the use to which the article has been dedicated, its commercial designation, its similarity to other merchandise, the condition in which it is imported, and other equally important considerations, the purpose of which is to determine what provisions of the tariff laws are applicable thereto.

Section 304(a), supra, requires that every article imported into the United States, which is capable of being marked, without injury, at the time of its manufacture, shall be marked in as permanent a manner as the nature of the article will permit, in a conspicuous place that shall not be obscured by any subsequent attachment or arrangement.

An article may be legally marked, or illegally marked, or it may not be marked at all, if the nature of the article will not permit.

It must be determined as to what group or class it belongs. Whether it is lawfully marked or unlawfully marked requires investigation, examination, and intelligent consideration and determination; the resultant is classification of the merchandise, to the extent at least, of the requirements of section 304(a), supra.

The levy and collection of the additional duty of 10 per cent of the appraised value of the merchandise, is dependent upon the classification of the merchandise, as to its character and the class to which it properly belongs, and the exercise of the right granted by section 304(a), supra, to the importer to export the merchandise under customs supervision.

Similarly, the levy of the additional duties herein is dependent upon the classification of the merchandise.

▇ As we have stated, the applicability of item 901.00 is determined by the character of the subject merchandise and the use to which it is put after importation, that is, whether or not it is "* * * to be *further* refined or otherwise improved in quality" or "*to be used* as * * * or in the production of livestock feed, or for the distillation of alcohol". The language of this provision clearly indicates an intention to follow the imported articles into consumption and, accordingly, brings into play the requirements set out in Rule 10(e) (ii).[5]

---

visions; 46 Stat. 701; 48 Stat. 943; 19 U.S.C. 1336, 1351) such tax shall not be considered a duty or import restriction, and except that no preference with respect to such tax shall be accorded any articles imported or brought into the United States, and except that

such tax may be subject to refunds as a tax under the provisions of section 6418(a).

5. Rule 10(e) (ii) was included in the tariff schedules to spell out "the conditions presently applied to actual use pro-

In Humphrey & MacGregor, Inc. v. United States, 61 Cust.Ct. 162, C.D. 3555, 288 F.Supp. 852 (1968), this court found that item 901.00 was subject to the requirements of Rule 10(e) (ii); we find no basis herein for disturbing that finding. In *Humphrey,* certain refined sugar, imported for re-export purposes, was diverted from its original use and sold for livestock feed. The importer claimed that additional duties assessed against the merchandise under item 910.-00 were improperly imposed, stating, among other reasons, that actual use of the sugar was the sole criterion applicable to claims for refund of such duties. The court overruled the protests, holding that—

The real issue in the case as we see it is whether plaintiff has complied with item 901.00. Item 901.00 as interpreted by rule 10(e) (ii) mandates the concurrence of three conditions as prerequisite to the exemption of the imported sugar from payment of additional duties. And these conditions are, namely, (1) the sugar must have been imported with the intent that it be used either as livestock feed, or in the production of livestock feed, or in one additional use not here relevant; (2) the sugar must have

actually been used for one of such purposes in the United States; and (3) proof of such use must have been furnished within 3 years of the entry of the imported sugar.

and that plaintiff failed to meet the first condition as to intent at the time of importation.

As plaintiff has not complied with the mandate of Rule 10(e) (ii), its claim cannot be sustained; and whether or not the imported sugar was in fact subsequently refined or further improved in quality is immaterial.[6]

It may well be, as plaintiff contends, that the raw sugar which was sold to Godchaux Sugar Refining Company was refined and an excise tax paid thereon pursuant to I.R.C. § 4501(a) (26 U.S.C. 4501(a)).[7] However, even if such were the case (and we make no findings in this regard in view of our conclusions herein), the question whether imposition of the excise tax on top of the additional duties assessed under item 901.00 was manifestly unintended by Congress and tantamount, as plaintiff suggests, to a proscribed form of double taxation, may not be reached.

■ The assessment of additional duties was consequent upon plaintiff's

visions under administrative and judicial precedent", whereas Rule 10(e) (i) was included to standardize to a certain extent tariff descriptions based upon use, other than actual use. Tariff Classification Study, Submitting Report, pp. 14–15.

6. By the same token, the provisions of section 54.7 of the Customs Regulations (19 CFR 54.7) pertaining to the release, without payment of additional duties under item 901.00, of sugars, sirups and molasses imported to be used as, or in the production of, livestock feed, or for the distillation of alcohol, upon furnishing proof of such use, have no bearing in this case. The fact that the regulation extends the period for filing proof of such use up to five years after the date of entry does not establish, as plaintiff asserts, the inapplicability of Rule 10(e) (ii). Whether this provision of section 54.7 is, in light of the General Interpreta-

tive Rule, *ultra vires,* is not before us for consideration.

7. Sec. 4501(a) provides that—
There is hereby imposed upon manufactured sugar manufactured in the United States, a tax, to be paid by the manufacturer at the rate of 0.53 cent per pound of the total sugars therein. The manufacturer shall pay the tax with respect to manufactured sugar (1) which has been sold, or used in the production of other articles, by the manufacturer during the preceding month (if the tax has not already been paid) and (2) which has not been so sold or used within 12 months ending during the preceding calendar month, after it was manufactured (if the tax has not already been paid). For the purpose of determining whether sugar has been sold or used within 12 months after it was manufactured, sugar shall be considered to have been sold or used in the order in which it was manufactured.

own failure to comply with the tariff statute by furnishing the required proof of processing within three years from the date of entry. Thus, it is not in a position to complain of double taxation for which it is responsible. See Chicago, B. & Q. R. Co. v. People, 136 Ill. 660, 27 N.E. 200 (1891).

██ Furthermore, plaintiff has no standing to raise this issue. Before an invalid double taxation may be said to exist, both taxes must have been imposed in the same year for the same purpose, upon property owned by the same person, and by the same taxing authority. Waterford Irr. District v. Stanislaus County, 102 Cal.App.2d 839, 228 P.2d 341 (1951); Aragon v. Empire Gold Mining and Milling Co., 47 N.M. 299, 142 P.2d 539 (1943). If excise taxes were levied upon the imported sugar after it was refined, they were not taxes imposed upon property of plaintiff; consequently, they fail to meet the test of double taxation. See 1 Cooley, the Law of Taxation (4th ed. 1924), sections 227 *et seq.*

██ Finally, we note plaintiff's assertion that the instant sugar is "obviously not the kind of merchandise which Congress sought to tax under Item 901.00." (brief, 22) This claim is totally without foundation. Item 901.00 assesses duty, with certain exceptions not pertinent hereto, on sugars, sirups and molasses provided for in items 155.-20 to 155.31, inclusive, if not to be further refined or improved in quality. Manifestly, this provision encompasses the raw sugar at bar. Indeed, raw sugar was specifically included among the types of sugar to be assessed with import tax under I.R.C. § 4501(b) prior to the assimilation of that provision into the tariff schedules.[8]

For the foregoing reasons, the protests are overruled. Judgment will be entered accordingly.

---

8. See footnote 2. See also Robert G. Lynch Co. v. United States, 49 CCPA 74, C.A.D. 799 (1962), holding raw green colored sugar assessed with tax under I.R.C. 4501(b), to be dutiable as sugar under the provision therefor of paragraph 501, Tariff Act of 1930.