**CLARENDON MARKETING, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 97–7.
Court No. 92–08–00575.

United States Court of
International Trade.

Jan. 17, 1997.

Piper & Marbury (David P. Langlois, New York City, Christopher Clay, Washington, DC), for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Mikki Graves Walser); of counsel: Edward N. Maurer, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York City, for Defendant.

## OPINION

MUSGRAVE, Judge.

This test case involves the proper classification of two 1989 entries of refined liquid hydrocarbon mixtures. The District Director of the U.S. Customs Service in San Juan, Puerto Rico liquidated the merchandise under the *Motor fuel* provision, subheading 2710.00.15 of the Harmonized Tariff Schedule of the United States ("HTS"). Plaintiff Clarendon Marketing, Inc. timely protested that classification and maintained that the merchandise should have been classified under HTS subheading 2710.00.25 as *Naphthas (except motor fuel or motor fuel blending stock)*. U.S. Customs Service Headquarters issued a ruling declaring that the merchandise was classifiable under the *Motor fuel blending stock* provision, HTS subheading 2710.00.18, and directed the District Director of Customs to deny the protest in full. Clarendon filed suit and moved for summary judgment. The Government cross-moved for summary judgment. The Court exercises its jurisdictional power under 28 U.S.C. § 1581(a) and decides the matter on summary judgment in favor of Plaintiff.

## Background

In contemplation of their motions for summary judgment, the parties entered into a Joint Stipulation and Order. From the record on the motions for summary judgment, the following undisputed facts and issues appear. Both refined and unrefined crude oil may constitute the type of petroleum product commonly referred to as "naphtha". As used in the petroleum refining and petrochemical manufacturing industries, the term "naphtha" applies to hydrocarbon mixtures which distill, *i.e.* vaporize, between 80 degrees Fahrenheit and 440 degrees Fahrenheit. The merchandise at issue possessed chemical properties such that their denomination as "naphthas" would be appropriate under the common meaning and general usage of that term. Although falling within the definition of "naphthas" for the purpose of the HTS subheading *Naphthas (except motor fuel or motor fuel blending stock) ("Naphthas")*, the merchandise was susceptible to use as motor fuel blending stock. Liquid hydrocarbon mixtures possessing properties similar to the subject merchandise are commercially suitable for and have been used as motor fuel blending stock; therefore, such use would not have been a fugitive application of the merchandise. It is unascertained but possible that the merchandise was used as motor fuel blending stock and that the purchaser who caused the importation intended to use it as blending stock at the time of importation. The parties agree that *Naphthas* is an *eo nomine* provision and *Motor fuel blending stock* is an actual use provision.

Clarendon entered both shipments of merchandise under the *Naphthas* provision, HTS subheading 2710.00.25, which imposes a duty of 10.5 cents per barrel. The District Director of the U.S. Customs Service liquidated both shipments under the *Motor fuel* provision, HTS subheading 2710.00.15, which imposes a duty of 52.5 cents per barrel. In response to Plaintiff's protests, the U.S. Customs Service Headquarters subsequently issued a ruling declaring that the correct classification was under the *Motor fuel blending stock* provision, HTS subheading 2710.00.18, which also imposes a duty of 52.5 cents per barrel.

The parties agree that the resolution of their motions depends upon the nature of the importer's burden, if any, to demonstrate the actual use of the merchandise. Plaintiff contends that its merchandise should have been classified as *Naphthas* because *Motor fuel blending stock* is an actual use provision such that classification thereunder is proper only when an importer elects to show actual use consistent with that provision. The Government contends that due to the parenthetical exclusion of "motor fuel blending stock" from the *Naphthas* subheading, it was incumbent upon Plaintiff to furnish proof of actual use other than as a motor fuel blending stock in order to escape classification as *Motor fuel blending stock* and obtain classification under *Naphthas.* The parties seek a ruling from the Court as to whether the merchandise is properly classified as *Naphthas* or *Motor fuel blending stock* under the stipulated facts.

 In their motions the parties merely contest the meaning and functional operation of subheadings in the tariff schedule and agree that the issue is ripe for summary judgment. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CIT Rule 56(d). Since the meaning and function of subheadings in the tariff schedule are purely matters of law (*Marubeni America Corp. v. United States,* 12 Fed. Cir. (T) ——, ——, 35 F.3d 530, 533 (1994)), the Court is poised to render summary judgment. The statutory presumption of correctness contained in 28 U.S.C. § 2639(a)(1) is inapposite to the Government's proffered classification. When merchandise is liquidated under a concededly erroneous classification, the presumption of correctness does not attach to the subsequent classification determination made by the U.S. Customs Service ("Customs"). *United States v. Magnus, Mabee & Reynard, Inc.,* 39 C.C.P.A. 1, 7, C.A.D. 455, 1951 WL 5371 (1951); *Abbey Rents v. United States,* 79 Cust. Ct. 103, 105, 79 Cust.Ct. 103, 442 F.Supp. 540, 542 (1977);

*Tomoegawa USA, Inc., v. United States,* 12 CIT 112, 114, 681 F.Supp. 867, 869 (1988). Since Customs liquidated the merchandise as *Motor fuel,* concedes classification as *Motor fuel* was erroneous, and presently argues before the Court that *Motor fuel blending stock* is the applicable provision, Customs' current position does not enjoy a presumption of correctness.

 Nor does the Court extend to Customs' routine classification decisions the ordinary measure of indulgence afforded to an agency's discretionary activities. *Crystal Clear Industries v. United States,* 13 Fed. Cir. (T) ——, —— n.*, 44 F.3d 1001, 1003 n.* (1995) ("Our agreement with the opinion of the CIT does not extend to the suggestion that a routine classification dispute is entitled to special deference under *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))." In rendering its decision the Court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

### Discussion

The parties agree that Plaintiff's merchandise possessed chemical properties such that classification was technically possible under either one of the competing subheadings. The language of subheading 2710.00.25 excludes blending stock from its domain: *Naphthas (except motor fuel or motor fuel blending stock).* An Explanatory Note to the blending stock provision, Additional U.S. Note 4 to Chapter 27 of the HTS, defines *Motor fuel blending stock* to mean "any product (*except naphthas of subheading 2710.00.25* ) . . . ." (emphasis added) The fulcrum of the controversy is the disputed means by which an importer may obtain classification under one or the other subheading. Plaintiff contends that proof of actual use is relevant and required if and only if the importer seeks classification under *Motor fuel blending stock;* otherwise, merchandise such as the hydrocarbons at issue fall within the *eo nomine Naphthas* provision.

The Government contends that such merchandise is initially captured by the *Motor fuel blending stock* provision, and that proof of actual use for a purpose other than blending stock is required to obtain classification under the lower *Naphthas* rate.

The language giving rise to the requirement of an actual use showing appears in connection with the *Motor fuel blending stock* provision: *Motor fuel blending stock* is a product "derived primarily from petroleum, shale oil, or natural gas, whether or not containing additives, *to be used for* direct blending in the manufacture of motor fuel." Additional U.S. Note 4 to Chapter 27 of the HTS (emphasis added). When words such as "to be used for" appear in connection with a tariff subheading, classification under that subheading is dependent on a demonstration of actual use. 2 Ruth F. Sturm, *Customs Law and Administration,* § 53.3(b), at 25 (3d ed. 1996). The Government concedes that *Motor fuel blending stock* is an actual use provision. Def.'s Reply to Pl.'s Opp'n. to Def.'s Cross–Mot. Summ. J. at 2. When classification is dependent upon actual use, the importer must satisfy certain conditions: HTS Additional U.S. Rule of Interpretation 1(b) declares that

> a tariff classification controlled by the actual use to which the imported goods are put in the United States is satisfied only if such use is intended at the time of importation, the goods are so used and proof thereof is furnished within 3 years after the date the goods are entered.

Federal regulations have formalized these requirements: under the heading "Rate of Duty Dependent Upon Actual Use", the Code of Federal Regulations provides that in order for entries to qualify under an actual use provision, the importer must: (1) file a declaration of intended use upon entry or enter the article under an actual use provision of the HTS (19 C.F.R. § 10.134); (2) maintain records showing the actual use of the merchandise (19 C.F.R. § 10.137); and (3) provide within three years of liquidation a certificate executed by the end-user attesting to the actual use of the merchandise (19 C.F.R. § 10.138). Courts have held that language such as "to be used as" and "for use

in" give rise to the mandatory actual use classification requirements outlined in the U.S. Rules of Interpretation and formalized in the Code of Federal Regulations. *Czarnikow–Rionda Co. v. United States,* 66 Cust. Ct. 431, 328 F.Supp. 487 (1971), *aff'd* 60 C.C.P.A. 6, 468 F.2d 211 (1972); *J.E. Bernard & Co., Inc. v. United States,* 80 Cust. Ct. 111, 1978 WL 30858 (1978). In the instant case, Plaintiff did not satisfy the mandatory conditions for obtaining classification under the *Motor fuel blending stock* actual use provision. Plaintiff obviously had no incentive to do so since its merchandise would then have been subject to a higher rate of duty than that afforded by *Naphthas.* Plaintiff argues that showing actual use is the importer's elective and that its decision not to pursue blending stock classification entitled it to classification under the *Naphthas* subheading.

An importer has an incentive to satisfy an actual use provision only when that classification affords a lower rate of duty. The controversy before the Court arises from the apparently unique circumstance that the actual use provision at issue imposes a higher rate of duty than the alternative provision applicable in this case. This odd circumstance has resulted from historical events. While the precursor to the HTS, the Tariff Schedules of the United States ("TSUS"), was originally in force, naphtha entries were eligible for classification under three subheadings *inter alia: Naphthas* (TSUS Part 10, Schedule 4, item 475.35, which carried a rate of duty at .25 cents per gallon); *Motor fuel* (TSUS Part 10, Schedule 4, item 475.25, which carried a rate of duty at 1.25 cents per gallon); and *Benzenoids* (TSUS Part 1, Schedule 4, item 407.16, which carried a rate of duty at 1.7 cents per pound plus 13.6 percent *ad valorem*). This original TSUS scheme created a "benzenoid anomaly" with respect to naphtha entries which were used as blending stock but incidentally contained more than *de minimis* amounts of benzenoid due to the catalytic process by which they were manufactured: by virtue of TSUS Headnote 1, Part 10, Schedule 4, such merchandise was classified under the Part 1 *Benzenoids* item rather than under a Part 10 item. This directive caused benzenoid naph-

tha blending stocks to suffer an effective rate of duty up to fifteen times higher than that imposed on entries of finished motor fuel itself.

▮ Pursuant to a study and recommendation by the United States International Trade Commission ("*Possible Effects of and Recommendations Concerning the Proposed Tariff Reclassification of Catalytic Naphthas and Other Motor Fuel Blending Stocks*", USITC Publication 1686, Final Rep. on Inv. 332–203, (1985)) ("ITC Report"), Congress enacted the *Motor fuel blending stock* actual use provision as item 475.27 in order to rectify the benzenoid anomaly. Under the new provision, benzenoid naphthas like the entries at issue in this case could escape the excessive *Benzenoids* rate if actual use as blending stock was shown, but they nevertheless remained subject to five times as much duty as entries under *Naphthas.* When the HTS was implemented to supersede the TSUS, the *Motor fuel blending stock* provision was carried over in its actual use form, but Headnote 1, Part 10, Schedule 4 was eliminated. Although it is clear that Congress inserted the *Motor fuel blending stock* provision into the TSUS in order to adopt the remedial advice of the International Trade Commission, neither party has cited any legislative history explaining the reasons either for the elimination of the headnote that initially created the benzenoid anomaly or for the retention of the *Motor fuel blending stock* provision in its actual use form under the HTS. Nor has the Court been able to locate any relevant legislative history upon its own investigation. The question before the Court is whether the actual use haven under the TSUS now operates to the detriment of the importer of benzenoid naphthas unless a showing of actual *non*-use as blending stock is made. The Government argues in the affirmative and rests its case upon the language of the tariff subheadings, indications of legislative intent embodied in the ITC Report, and judicial precedent. One main problem with the Government's position is that entries may not be classified as *Motor fuel blending stock* without the required actual use showing. Certification of actual use is a mandatory precondition for

classification under an actual use provision. *Czarnikow–Rionda Co. v. United States,* 66 Cust. Ct. 431, 328 F.Supp. 487, (1971), *aff'd* 60 C.C.P.A. 6, 468 F.2d 211 (1972) (since plaintiff did not comply with the certification mandate, it failed to satisfy the actual use provision and the fact that the imported merchandise was further refined or improved consistently with the actual use requirement was irrelevant); *J.E. Bernard & Co., Inc. v. United States,* 80 Cust. Ct. 111, 118, 1978 WL 30858 (1978) ("[E]ven though a product is actually used in the manner contemplated by an actual use provision, it may be classified under that provision only if the mandate of the general interpretative rule [requiring certification] has been complied with"). The Government is not entitled to classify an entry under an actual use provision absent the requisite showing any more than an importer is entitled to actual use classification without making the requisite showing. Based upon the U.S. Rules of Interpretation, the relevant regulations in the Code of Federal Regulations, and judicial precedent, Customs incorrectly determined that Plaintiff's merchandise should have been classified as *Motor fuel blending stock,* as Plaintiff did not satisfy the mandatory requirements for actual use classification.

The parenthetical in the *eo nomine* subheading for naphthas expressly excludes motor fuel blending stock from its purview. Based on this language the Government argues,

> Thus, the merchandise classifiable under [the Naphtha subheading] is the merchandise which is not ... actually used as motor fuel blending stock.... [T]o qualify for classification under subheading 2710.00.25 as naphthas, the importer must demonstrate that the merchandise is not ... motor blending stock, and to make this demonstration, the importer must satisfy the requirements of Additional U.S. Rules of Interpretation 1(b).

Def.'s Cross–Mot. Summ. J. at 13. "The sole issue to be decided is whether the imported merchandise is subject to the requirements of actual [non-]use [as blending stock] as a result of the limiting language of the naphtha provision." Def.'s Reply to Pl.'s Opp'n. to Def.'s Cross–Mot. Summ. J. at 2. Plaintiff asserts that if Congress had intended the *Naphthas* provision to operate as an actual non-use provision, it would have explicitly required certification of non-use just as it has done under U.S. Note 2 to Subchapter I of Chapter 99 of the HTS, pursuant to which an importer may certify uses of ethyl alcohol as "other than liquid motor fuel" in order to avoid additional duties imposed under HTS subheading 9901.00.50. "Plainly, if Congress wished to impose a certification of non-use as a prerequisite to classification of a naphtha, it was perfectly capable of doing so. Congress simply did not do so here and there is nothing in the legislative history, the notes or the statute, to suggest it did [wish to do so]." Pl.'s Opp'n to Def.'s Cross–Mot. Summ. J. at 13.

The limiting language in the *Naphthas* subheading does not give rise to an actual non-use provision: the exclusionary parenthetical must be viewed as relating to the lexicon of the tariff schedule itself. Under the applicable rules and definitions, even if a naphtha entry is used as blending stock, it is not *Motor fuel blending stock* unless actual use is certified. The parenthetical therefore excludes only that merchandise which has been classified under *Motor fuel blending stock* pursuant to an actual use showing. Moreover, there is absolutely no precedent for construing limiting language in an *eo nomine* provision as signifying Congressional intent to create an actual non-use provision. The Government may not infer actual non-use requirements where none of the triggering language appears anywhere in the tariff schedule or its interpretative notes. The Government's attempt to assume the role of a legislative body by inventing an actual non-use provision out of an *eo nomine* provision is necessarily rejected.

The conclusion that the exclusionary language in the *Naphthas* subheading does not *per se* create an actual non-use provision may also be understood on a more theoretical level. *Motor fuel blending stock* may function as a legal fiction: even if a naphtha is actually used as blending stock, it is not necessarily called *Motor fuel blending stock* under the HTS. Chief use provisions may

also operate as legal fictions: an entry is actually utilized inconsistently with an applicable chief use provision; nevertheless, it is classified according to the chief use of like merchandise in the United States. *Pacific Guano & Fertilizer Co. v. United States,* 15 Ct. Cust. 218 (1927) (despite plaintiff's proof that its merchandise was actually used as fertilizer, classification was proper under the chief use provision for animal feed); *United States v. Colibri Lighters (U.S.A.) Inc.,* 47 C.C.P.A. 106, 1960 WL 8513 (1960) (despite plaintiff's proof that merchandise was exclusively used as table lighters, classification was proper under the chief use provision for pocket lighters). These types of legal fiction abound in the tariff schedule and allow for efficient Customs administration: chief use provisions prevent Customs from suffering the burden of proving actual use prior to classification, and actual use provisions place the burden on the importer to demonstrate its entitlement to favorable tariff treatment. The Government may not avail itself of legal fictions designed for its benefit only to insist on non-fictional definitions in circumstances when the story unfolds to its distaste. The parenthetical exclusion of blending stock from the *Naphthas* subheading applies only to merchandise which has obtained blending stock classification pursuant to an actual use showing. This ruling does not countervail express Congressional intent: the parenthetical was added without explanation as a "technical amendment" to the *Naphthas* subheading (H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 729 (1988)), presumably to mirror the Explanatory Note's explicit exclusion of "naphthas of subheading 2710.00.25" from the *Motor fuel blending stock* provision. The limiting language of the *Naphthas* provision does not require the importer to show non-use as blending stock any more than the limiting language in *Motor fuel blending stock* requires the importer to show non-use as *Naphthas.*

The practical reality of the motor fuel manufacturing industry as detailed in the ITC Report supports the view that the parenthetical exclusion of blending stock does not indicate Congressional intent to exclude all naphthas used as motor fuel blending stock from the *Naphthas* category. The

Government argues that "the ITC seemed to be trying to insure that no blending stock entered at the naphtha rate" (Def.'s Cross-Mot. Summ. J. at 14), and that this "intent" should currently be honored. The Customs Headquarters Ruling in connection with the subject entries also manifests the opinion that no blending stock should enter under *Naphthas:*

> The definition of motor fuel blending stock [appearing in Additional U.S. Note 4 to Chapter 27 of the HTS] states that the provision does not cover naphtha classifiable as naphtha. Therefore, Customs recognizes that there are two types of naphtha for classification purposes: naphtha which does not have the characteristics of a blend stock would be classifiable as naphtha; however, naphtha which does have the characteristics of a blend stock would be classified as blend stock. . . .

> It is Customs' position that regardless of the intent (or lack thereof) of the importer at entry, if naphtha has the characteristics of a blend stock, it is classifiable as such.

U.S. Cust. H.Q. Rul. 088032, December 23, 1991. The Government advances this position before the Court: "As long as the naphtha has the 'characteristics of blendstock' or naphtha with such specifications has significant use as blendstock, the merchandise is subject to the actual [non-]use requirement." Def.'s Reply to Pl.'s Opp'n to Def.'s Cross-Mot. Summ. J. at 7. In addition to burying the mandatory actual use requirements under the rug, this stance sweeps much more broadly than Congress can be shown to have intended and diverges substantially from the historical tariff treatment of naphthas.

In admonishing against the adoption of a chief use provision for motor fuel blending stock, the ITC declared, "Adoption of a chief-use provision for motor fuel blending stock would supersede with [sic] the existing [*eo nomine* ] provision for naphthas of TSUS item 475.35, because *the bulk of naphthas, including nonbenzenoid naphthas covered by this item, are used in motor fuel blending.*" ITC Report at 54 (emphasis added). This is an unequivocal statement that the *eo nomine Naphthas* provision covered nonbenzenoid naphthas used in motor fuel blending. In

following the ITC's recommendation to promulgate an actual use rather than a chief use blending stock provision, Congress ensured that nonbenzenoid naphthas could continue to enter under the *Naphthas* provision even if they were used in their common blending stock application. This fact refutes the Government's position that the exclusionary language in the *Naphthas* provision was designed to ensure that no naphtha used as blending stock entered under *Naphthas*. Because the TSUS *Naphthas* item encompassed nonbenzenoid naphthas, the bulk of which were used in motor fuel blending, it is clear that Congress intended the parenthetical to exclude only benzenoid naphthas that had escaped *Benzenoid* classification by dint of an actual use showing as blending stock. Since such a showing would entail its very classification as *Motor fuel blending stock,* the amendment of the *Naphthas* provision parenthetically to exclude "motor fuel blending stock" was indeed a highly technical one. These observations demonstrate that the Government's position is far too broad as well as incorrect: there is no basis in the tariff schedule or the legislative history to require a showing that nonbenzenoid naphthas are not used as blending stock before they may be classified as *Naphthas,* and the parenthetical exclusion in the *Naphthas* subheading did not reflect an intent to exclude all blending stock from the *Naphthas* category.

■ The Government points out the general rule that where an *eo nomine* and a use provision compete, the use provision prevails. "[A]s between an *eo nomine* enumeration and an equally applicable enumeration by use, the use provision is generally (but not always) held to be the more specific." *Novelty Import Co. v. United States,* 55 Cust. Ct. 169, 1965 WL 9391 (1965). Certainly this rule applies when the competing provision is a chief use provision as in the cases cited by the Government; however, the rule is inapplicable when the competing provision is an actual use provision. As the ITC Report recognized, "Since the TSUS item 475.35. is *eo nomine* [*Naphthas* ] ..., it would prevail over the [proposed actual] use provision, thereby maintaining historical treatment of nonbenzenoid naphthas." ITC Report at 54.

This remark indicates not only the ITC's correct understanding of tariff term priorities but also corroborates the fact that nonbenzenoid naphthas used as blending stock historically have been entitled to classification under the *Naphthas* subheading.

The Government argues that there is nothing novel in its position that an actual use provision may redound to the detriment of the importer, citing *Czarnikow–Rionda Co. v. United States,* 66 Cust. Ct. 431, 328 F.Supp. 487 (1971), *aff'd,* 60 C.C.P.A. 6, 468 F.2d 211 (1972). *Czarnikow–Rionda* involved two separate tariff provisions that subjected sugar products to duty. The plaintiff did not challenge classification under the first and permanent tariff item; however, the plaintiff objected to the assessment of additional duties on sugar pursuant to the second temporary tariff item which assessed an additional rate of .53 cents per pound on sugar products "if not to be further refined or otherwise improved in quality." The courts held that this language from the temporary item created an actual use provision which the plaintiff did not satisfy due to its failure to certify the actual use of the goods. 66 Cust. Ct. at 437, 328 F.Supp. at 492, 60 CCPA at 9, 468 F.2d at 214. The Government suggests that *Czarnikow–Rionda* involved an example of an actual use provision the satisfaction of which operated to augment the rate of duty: *Czarnikow Rionda* is a case "where the provision with words invoking actual use appeared in the provision with the *less* favorable rate." Def.'s Cross–Mot. Summ. J. at 22–23. Although the actual use language at issue in *Czarnikow–Rionda* did indeed appear in a provision subjecting merchandise to an additional duty, demonstration of actual use under that temporary tariff item resulted in *more* favorable treatment because it exempted the merchandise from the additional duty. As the appellate court remarked, "proof of further refining ... relieves the importer of the additional duty imposed...." 60 C.C.P.A. at 9, 468 F.2d at 214. The mere appearance of a counterfactual actual use clause in a provision which otherwise imposes an additional duty transparently fails to support the argument that there is nothing novel about an actual use

provision operating to the detriment of an importer. The Government has not located a single example of an actual use provision the fulfillment of which results in higher rates of duty relative to the competing provision. This is no surprise since the *raison d'etre* of actual use provisions is to grant more favorable rates of duty for preferred uses of merchandise.

In exchange for the benefit afforded by actual use provisions, importers are burdened to declare, track, and certify the actual use of the merchandise. These burdens eliminate the ministerial hardships that would be visited upon Customs if verification of actual use were its own responsibility. This allocation of benefit and burden dovetails the political intent to reward favored use with importers' selfish incentives and efficient Customs administration. In affirming the trial court's decision in *Czarnikow–Rionda*, the appellate court recognized this salutary confluence:

> We concur with the lower court's finding that *the language of [the temporary tariff item] indicates an intention to follow the imported merchandise into consumption,* thus bringing into play the actual use requirements.... The view we take coincides with the policy expressed by the Tariff Commission in the *Tariff Classification Study* [*Submitting Report,* 1960] ... that, *in view of the burdens imposed on customs officers and importers, merchandise which must be so followed into consumption should be that which is to be accorded more favorable treatment than like merchandise not so used.*

60 C.C.P.A. at 9, 468 F.2d at 214. According to Plaintiff, the Government contorts the logic and policy behind the provisions at issue. The Government submits that its position is consistent both with the logic of actual use provisions and the policy expressed by the Tariff Commission and embraced by the courts:

> This is exactly the Customs Service's position here: to be accorded the more favorable treatment (relative to the blendstock provision) as "naphtha (except motor fuel or motor fuel blending stock)," the non-fuel and non-blending stock uses must be as-

certained and certified. Thus, even if the more favorable rate is in a provision which is not the one of the pair that has the word or phrase which invokes actual use, classification under the more favored provision requires that the merchandise be followed into commerce to ascertain its actual use.

Def.'s Cross–Mot. S.J. at 20. The Government's argument is unpersuasive. First, the italicized language from the appellate decision in *Czarnikow–Rionda* quoted above states that when classification under a particular tariff heading involves following the merchandise into consumption, it is merchandise which is used consistently with that very heading which should be accorded the more favorable tariff treatment. In contrast, the Government's position is that merchandise which is *not* used consistently with the actual use provision in question should be accorded more favorable treatment under an entirely different *eo nomine* tariff provision. The Government's reading frustrates Congressional intent to accord relatively favorable treatment to merchandise described by the actual use provision and attempts to bootstrap the *eo nomine Naphthas* provision into an actual non-use provision for naphthas susceptible to blending stock applications.

The Government's stance in this case is inconsistent with its apparent position in two other of Plaintiff's actions suspended hereunder. In one of those actions (*Glencore Marketing, Inc. v. United States,* Court No. 95–01–00097), Plaintiff entered as *Naphthas* a liquid hydrocarbon mixture containing over 50% of a single type of hydrocarbon compound. Customs liquidated the naphthas under *Other hydrocarbon mixtures,* HTS subheading 2710.00.60, dutiable at 7% *ad valorem.* As a "protective measure" Plaintiff certified use as petrochemical feedstock in an attempt to qualify under the *Naphthas* provision. Customs refused to reliquidate the entry. In the other action (*Glencore Marketing, Inc. v. United States,* Court No. 95–03–00237), Plaintiff entered a similar hydrocarbon mixture as *Motor fuel blending stock.* Again Customs liquidated the naphthas under *Other hydrocarbon mixtures.* The importer was able to show use as blending stock for 151,000 out of 153,000 barrels

and thereby obtained classification under *Motor fuel blending stock;* the other 2000 barrels remained liquidated as *Other hydrocarbon mixtures.* Without pretending to decide those cases, it appears that in the latter instance, Customs correctly applied the tariff provisions by insisting that actual use as blending stock must be shown before classification as *Motor fuel blending stock* obtains. In the former instance, the Government explains that Plaintiff erroneously believed that the appropriate pairing was between *Naphthas* and *Motor fuel blending stock,* whereas the proper pairing was between *Other hydrocarbon mixtures* and *Motor fuel blending stock:* since there was no showing of use as blending stock (because the naphthas were not in fact used as blending stock), the correct classification remained under *Other hydrocarbon mixtures.* Def.'s Reply to Pl.'s Opp'n to Def.'s Cross-Mot. Summ. J at 12. The scheme that the Government proffers is draconian: *Motor fuel blending stock* functions as an actual use provision with respect to all other pairings save *Naphthas;* between *Motor fuel blending stock* and *Naphthas, Motor fuel blending stock* functions as a default provision and *Naphthas* functions as an actual non-use provision; *Naphthas* functions as an actual non-use provision with respect to *Motor fuel blending stock* (and *Motor fuel*) but otherwise functions as an *eo nomine* provision.

Not only did Customs' unpredictable administration of the tariff provisions at issue in this case deprive Plaintiff of notice and fair warning, but Customs' construction of those tariff provisions are incorrect as a matter of law because they are inconsistent with the plain meaning of the tariff schedule, the relevant interpretative notes, the Code of Federal Regulations, judicial precedent, and legislative history.

### Conclusion

Customs incorrectly determined that Plaintiff's merchandise should have been classified under the actual use *Motor fuel blending stock* provision, HTS subheading 2710.00.18. Classification under *Motor fuel blending stock* is improper unless the importer chooses to seek such classification and affords the mandatory indicia of intent and actual use. Plaintiff exercised its prerogative not to afford those proofs and therefore was entitled to classification under *Naphthas (except motor fuel and motor fuel blending stock),* HTS subheading 2710.00.25. On the stipulated facts of this case, Plaintiff is entitled to summary judgment.