**CLARENDON MARKETING, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 97–1284.

United States Court of Appeals, Federal Circuit.

May 22, 1998.

David P. Langlois, Piper & Marbury, L.L.P., New York City, argued for plaintiff-appellee. With him on the brief was John L. Moore, Jr.

Mikki Graves Walser, Civil Division, Commercial Litigation Branch, Department of Justice, International Trade Field Office, New York City, argued for defendant-appellant. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Edward N. Maurer, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City.

Milton B. Whitfield, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for amici curiae Aectra Refining & Marketing, Inc. and ITOCHU International, Inc. Of counsel was Imad D. Abyad.

Before PLAGER, RADER, and BRYSON, Circuit Judges.

PLAGER, Circuit Judge.

This case presents us with a sticky question of statutory construction, one of first

impression, regarding the tariff classification of imports of certain petroleum products. The merchandise falls within the accepted definition of "naphthas," but is also suitable and commonly used as a motor fuel blending stock. The constructional question is whether the merchandise should be classified under the tariff subheading "Naphthas (except motor fuel or motor fuel blending stock)," or under the subheading "Motor fuel blending stock," the latter carrying a substantially higher duty. The parties presented the question to the United States Court of International Trade by way of cross-motions for summary judgment. As could be expected, the Government favored classification under the higher duty subheading, i.e., the blending stock subheading, arguing that that is the sensible reading of the statute, whereas the importer, Clarendon Marketing, Inc. ("Clarendon"), argued for classification under the naphthas subheading, on the ground that that is what the statute clearly says. The Court of International Trade agreed with Clarendon's reading of the statute, and accordingly granted summary judgment in Clarendon's favor, setting forth its analysis in a thorough opinion. *Clarendon Mktg., Inc. v. United States*, 955 F.Supp. 1501 (C.I.T. 1997). The Government appeals the judgment. Because the plain meaning of the relevant legislation mandates the conclusion reached by the Court of International Trade, we affirm.

## BACKGROUND

Only a few background facts remain beyond the introduction already given. The petroleum products at issue (specifically, refined liquid hydrocarbon mixtures) were imported by Clarendon in 1989. Clarendon entered the merchandise as naphthas, under subheading 2710.00.25, "Naphthas (except motor fuel or motor fuel blending stock)," of the Harmonized Tariff Schedule of the United States ("HTSUS") (herein the "naphthas subheading"). The naphthas subheading imposes a duty of 10.5 cents per barrel.

However, the District Director of the U.S. Customs Service liquidated the merchandise as motor fuel, under HTSUS subheading 2710.00.15, "Motor fuel" (herein the "motor fuel subheading"), which imposes a duty of 52.5 cents per barrel. Clarendon protested, and in response, the U.S. Customs Service Headquarters ruled that the correct classification of the merchandise was motor fuel blending stock, under HTSUS subheading 2710.00.18, "Motor fuel blending stock" (herein the "blending stock subheading"), which also imposes a duty of 52.5 cents per barrel. Clarendon then filed suit in the Court of International Trade and promptly moved for summary judgment. The Government in turn cross-moved for summary judgment. As already noted, the Court of International Trade ruled in Clarendon's favor, holding that Customs had erred in liquidating the merchandise under the blending stock subheading and that the merchandise instead had to be classified under the naphthas subheading.

The parties have stipulated that the imported merchandise is accurately referred to as "naphtha," as that term is known and used chemically and commercially. The HTSUS uses the plural form of that term, i.e., "naphthas," and the parties agree that the merchandise fits within the meaning of "naphthas" as used in the naphthas subheading; the parties however disagree as to the effect of the subheading's parenthetical exception, "except motor fuel or motor fuel blending stock." On the other hand, the parties also agree that the primary use for naphthas such as the merchandise at issue here is as a motor fuel blending stock. It is also undisputed that neither party has established (or attempted to establish) the actual use made of the imported merchandise; thus, the actual use is unknown.

## DISCUSSION

### 1.

There are no factual issues in this case. The propriety of the summary judgment turns on the proper construction of the HTSUS, which is a question of law. *See Bauerhin Techs. Ltd. v. United States*, 110

F.3d 774, 776 (Fed.Cir.1997). On questions of law, we defer to neither the Court of International Trade nor Customs. *See Universal Elecs. Inc. v. United States,* 112 F.3d 488, 493 (Fed.Cir.1997). Therefore, our review of the purely legal issue is plenary. *See id.*

### 2.

 Subheading 2710.00.25, the naphthas subheading, literally contains three types of tariff classification provisions: an *eo nomine* provision, an actual use provision, and a principal use provision. An *eo nomine* classification provision is one which describes a commodity by a specific name. *See Nidec Corp. v. United States,* 68 F.3d 1333, 1336 (Fed.Cir. 1995). In contrast, as their names suggest, actual use and principal use provisions classify commodities by use. *See* 2 Ruth F. Sturm, *Customs Law & Administration* § 53.3, at 15 (3d ed.1995). The naphthas subheading, "Naphthas (except motor fuel or motor fuel blending stock)," contains elements of each of these three types.

The parties agree that the term "naphthas" in the subheading is an *eo nomine* provision, and they agree that the term "naphthas" describes the merchandise by name. However, as the Government points out, this *eo nomine* term is limited by the parenthetical "except motor fuel or motor fuel blending stock."

 The "motor fuel" clause of the parenthetical corresponds to the motor fuel subheading, HTSUS subheading 2710.00.15. As defined by Additional U.S. Note 3 to Chapter 27 of the HTSUS, the motor fuel subheading is a principal use provision: "'*motor fuel*' is any product ... which is principally used as a fuel in internal-combustion or other engines." Thus, a naphtha whose principal use is as a motor fuel is excluded from the naphthas subheading by way of the parenthetical, and is instead classified under the motor fuel subheading, unless some other provision requires otherwise. *See* Additional U.S. Rule of Interpretation 1(a) of the HTSUS. As observed by the Court of International

Trade, *Clarendon Mktg.,* 955 F.Supp. at 1506–07, a principal (or chief) use provision such as the motor fuel subheading may function as a controlling legal label, in the sense that even if a particular import is proven to be actually used inconsistently with its principal use, the import is nevertheless classified according to its principal use.

 The second part of the parenthetical in the naphthas subheading, "motor fuel blending stock," corresponds to the motor fuel blending stock subheading, HTSUS subheading 2710.00.18. Additional U.S. Note 4 to Chapter 27 of the HTSUS specifies that "'*motor fuel blending stock*' means any product (except naphthas of subheading 2710.00.25) ... to be used for direct blending in the manufacture of motor fuel." The inclusion in this definition of the words "to be used for" makes classification under the blending stock subheading dependent upon the actual use of the merchandise, *i.e.,* the subheading is an actual use provision, as pointed out by the Court of International Trade. *Clarendon Mktg.,* 955 F.Supp. at 1504 (citing Sturm, *supra,* § 53.3(b), at 25); *accord E.M. Chemicals v. United States,* 923 F.Supp. 202, 206 n. 4 (C.I.T. 1996).

Additional U.S. Rule of Interpretation 1(b) of the HTSUS sets forth specific requirements for classification under an actual use provision such as the blending stock subheading:

In the absence of special language or context which otherwise requires—

. . . .

(b) a tariff classification controlled by the actual use to which the imported goods are put in the United States *is satisfied only if* such use is intended at the time of importation, the goods are so used and *proof thereof is furnished within 3 years after the date the goods are entered* [.]

(Emphasis added.) These requirements have been formalized in the Code of Federal Regulations under the heading "Rate of Duty Dependent Upon Actual Use." 19 C.F.R. §§ 10.131—10.139 (1994).

According to the plain language of Additional U.S. Rule of Interpretation 1(b), classification under an actual use provision such as the blending stock subheading is proper only if the actual use made of the imports in the United States is proven to be that of the actual use provision. Actual use provisions such as the blending stock subheading can also function as a controlling legal label, in the sense that an import actually used in accordance with the actual use provision will not be classified as such unless its actual use is proven (or unless "special language or context . . . otherwise requires," a point to be addressed below).

In the context of this case, a naphtha that is suitable for use as a motor fuel blending stock is not considered such for purposes of tariff classification unless the actual utilization of the naphtha is proven to be as a motor fuel blending stock. Therefore, if such proof is not made, the naphtha is not excluded from the naphthas subheading by way of the motor fuel blending stock portion of the parenthetical exception to the naphthas subheading. By like token, unless such proof is made, the naphtha is not classified under the blending stock subheading.

Here it is undisputed that the products imported by Clarendon are naphthas. Furthermore, it is undisputed that, while the primary use for the imported naphthas generally is as a motor fuel blending stock, no proof was made of the actual utilization of the naphthas, either by Clarendon or by the Government. Neither party made an attempt to prove its actual use as a motor fuel blending stock. Accordingly, the plain meaning of the HTSUS and the accompanying notes and rules of interpretation dictate that the merchandise not be considered a motor fuel blending stock for purposes of tariff classification. As such, the merchandise cannot be classified under the blending stock subheading and the merchandise is not excepted from the naphthas subheading by way of the blending stock portion of the parenthetical exception to the naphthas subheading. Furthermore, because there is no allegation that the principal use of the merchandise is as a motor fuel, the merchandise is not excepted from the naphthas subheading by way of the motor fuel part of the parenthetical exception. Hence, the merchandise is properly classified under the naphthas subheading.

■ The Government argues that this result makes little sense. It argues that an importer of naphthas will never voluntarily prove that the actual utilization of the naphthas is as a motor fuel blending stock because that would subject the importer to the higher-duty blending stock subheading, as opposed to the lower-duty naphthas subheading. The Government takes the position that because the primary use of the naphthas at issue is as a motor fuel blending stock, Clarendon should bear the burden of proving use *other* than as a blending stock, and that absent such proof the naphthas should be classified under the blending stock subheading. The Government argues in essence that the naphthas subheading is an "actual *non*-use" provision because of the parenthetical exception in the subheading. According to the Government, unless the naphthas are proven not to be used as a blending stock, the naphthas must be classified under the blending stock subheading.

To shift the burden to the importer to prove a *non*-use of the imported goods—as proposed by the Government—we would have to rewrite the HTSUS. For one, we would have to rewrite the rule of interpretation governing actual use provisions, namely, Additional U.S. Rule of Interpretation 1(b). As previously explained, Additional U.S. Rule of Interpretation 1(b), where applicable, requires proof of a particular actual use. (The rule does not require proof of actual *non*-use.) Prior to classification of goods under the motor fuel blending stock subheading (an actual use provision), the rule requires proof of actual use as a motor fuel blending stock. No such proof of the actual use of the goods involved here has been made.

To avoid this mandate, the Government proposes inserting a major limitation into Additional U.S. Rule of Interpretation 1(b),

namely, limiting its application to the situation in which the actual use provision provides the importer with a more favorable duty. Under the Government's proposal, when an actual use provision provides a less favorable (*i.e.*, higher) duty, the requirement reverses—the importer must prove use other than that of the actual use provision. Thus, the Government's proposal is to add an unwritten limitation to the rule, which would then trigger an unwritten *non*-use proof requirement.

Additional U.S. Rule of Interpretation 1(b), as enacted and as it currently reads, does not support the Government's novel approach. The most support the Government has is the introductory clause to the rule: "*In the absence of special language or context which otherwise requires*—... (b) a tariff classification controlled by ... actual use ... is satisfied only if ... proof thereof is furnished...." Additional U.S. Rule of Interpretation 1(b) (emphasis added). This is woefully inadequate support for the Government's position. Even if the argument, that Congress must have intended something other than the result called for here, carried some weight, there is no special language or context here that can be said to *require* a reversal of the plain language of Additional U.S. Rule of Interpretation 1(b). The only "special language" is that of the higher tariff for motor fuel blending stock, and the only "context" is that the result the rule calls for is contrary to the fiscal interests of the Government.

Additionally, the Government's classification of the merchandise under the motor fuel blending stock subheading is contrary to the HTSUS's express definition of "motor fuel blending stock" as "any product (*except naphthas of subheading 2710.00.25*)...." Additional U.S. Note 4 (emphasis added). The parenthetical "except naphthas ..." indicates that the default classification of the merchandise at issue is under the naphthas subheading, not the blending stock subheading. This conclusion follows from the parties' agreement that the term "naphthas" is an *eo nomine* provision and that "naphthas"

describes the merchandise by name. As such, absent proof of contrary actual use as a blending stock or primary use as a motor fuel, the merchandise is considered "naphthas," and the parenthetical of Note 4 applies to exclude the merchandise from the blending stock subheading.

That the Government's proposed construction of the naphthas subheading would require major surgery on the statute is made further apparent upon consideration of how the Government suggests treating the motor fuel part of the subheading's parenthetical. In order to qualify for classification under the naphthas subheading, the Government suggests that an importer also has to prove non-use as a motor fuel. Thus, according to the Government, unless the importer also proves non-use as a motor fuel, the merchandise cannot be classified under the naphthas subheading. The Government suggests it would require such proof even if the principal use of the merchandise is other than as a motor fuel. This is contrary to the express definition of motor fuel as a principal use provision, *i.e.*, for such provisions classification is dependent upon principal use, not proof of actual use or non-use. *See* Additional U.S. Note 3; Additional U.S. Rule of Interpretation 1(a).

On the other hand, it is not clear if the Government, under its proposed construction, would allow classification under the naphthas subheading if the principal use of the merchandise was as a motor fuel, but the importer proved the actual use to be something other than as a motor fuel or motor fuel blending stock. Consistent with its fiscal approach, the Government presumably would seek to classify the merchandise under the higher-duty motor fuel subheading (in accordance with the plain language of Additional U.S. Rule of Interpretation 1(a) regarding principal use provisions), though that result would be inconsistent with the construction proposed by the Government in this case. All of which suggests that a rewrite of the statute should not be undertaken piecemeal, and certainly not under the guise of statutory construction.

**1470**

The parties, as well as the Court of International Trade, discuss at some length the legislative history, but they divine different conclusions from that history. However, in view of the clear terms with which Congress has spoken, there is no need for us to engage that discussion.

We are not unsympathetic with the Government's view that good sense, at least as the Government sees it, calls for a result different from that which the statute seems to dictate. This is the kind of case that challenges a court's commitment to the primacy of the legislative branch in the writing of law. It would not be difficult to construct an opinion holding that Congress, had it thought about this problem, would have written the statute differently, and therefore the court should impose the rule we think Congress would have preferred to the one it wrote. That, however, does honor neither to the respective roles of Congress nor the court. As suggested, there are both technical and policy issues that would have to be resolved in a redrafting of these statutory provisions. Congress has both the opportunity and the authority to undertake that activity. Properly viewed, we have neither. Given the provisions of the HTSUS as they currently stand, the merchandise was properly classified under the naphthas subheading.

### CONCLUSION

We affirm the judgment of the Court of International Trade.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*